TERRELL, Justice.
Appellee sued appellants, Atlantic Coast Line Railroad Company, a corporation, hereinafter referred to as the Railroad Company, William Eli Cooper, J. R. Felk-ner, E. J. Benton, D. T. Johns and D. T. Haynes, agents of the Railroad Company, for the negligent death of his eighteen months old child. In their answer, defend *477 ants denied negligence and as an affirmative defense charged that the death of said child was caused by the negligence of the plaintiff in placing it in charge of a caretaker who negligently permitted it to wander from the house alone and across the tracks of the defendant where it was killed. A trial resulted in a verdict and judgment of $10,000 against each defendant. Motion for new trial was granted as to defendants D. T. Johns, D. T. Haynes, E. J. Benton and J. R. Felkner but denied as to the Railroad Company and William Eli Cooper who bring this appeal.
It is first contended that the evidence shows no negligence on the part of the Railroad Company.
The record shows that the deceased child was about eighteen months old and could walk; that about 7:30 A.M., April 4, 1953, it was taken to the home of a Mrs. Eures to be kept during the day; she placed it in the front room and gave it toys to play with; the door was open, but there was a closed screen door; Mrs. Eures went about her household duties but later heard the screen door slam and went to see about the child.
The Eures house fronts on and sits about 32 feet from Banana Street, 134 feet to the east of the point where the railroad crosses Banana Street. When Mrs. Eures missed the child, she went to the front door but could not see it; she walked around the ■ house and back to the front yard but could not see it. About that time, she heard the train whistle and rushed out on the street and saw the child at the railroad track and the train was approaching the street. The train consisted of a Diesel engine, four freight cars and a caboose. It was not scheduled to stop at Bowling Green where the accident occurred. It crossed Main Street, 1,530 feet from Banana Street at a speed of 35 miles per hour but was accelerating speed at the time. The bell was automatically ringing and the whistle was sounding for the crossing. The engineer Cooper, Johns and Haynes, two trainsmen, were riding in the engine and saw the child when the train was about 600 feet from Banana Street. She had crossed the track 4 or 5 feet to the west, the engineer applied the brakes in emergency at. once and began blowing the whistle continuously. The child turned and walked back on the track in front of the engine and stopped. When Johns and Haynes saw it walk back on the track, they proceeded by the catwalk to the front of the engine, thence to the pilot and tried to catch the child but were unable to do so before the .engine struck and injured it fatally. The engine came to a stop 464 feet beyond the crossing.
It is admitted that the road was straight, that the view was unobstructed but as to speed and other factors heretofore stated, the parties are not in agreement. It is pointed out by appellee that Bowling Green was an incorporated town or city; that the train arrived there about 8:30 in the morning of the accident; that the speed tape filed as an exhibit shows repeated violations of the top speed limit of 40 miles per hour; that Cooper, the engineer, admitted ignorance of the braking system, its operational features, its limits of performance or other factors involved in the operation of the train. There was dispute as to what performance might be expected of the braking system. There was controversy as to whether or not the wheels locked and skidded when the brakes were applied to prevent the accident. All of said factors were material considerations for the jury in determining the question of negligence. The fact that the bell rang and the whistle blew was not sufficient to avoid the charge of negligence if the train was exceeding speed limit and the braking system was not in good mechanical condition.
Such was the controversy out of which the jury was required to extract its verdict. How it reasoned, we have no way of telling; it may have concluded that there was negligence on the part of both parties to the cause — that even though the whistle blew and the bell rang consistently, it may have found that defendants did not exercise reasonable care as to speed of the train, signals, lookouts, and that the mechanical condition of the locomotive was such that it could not be stopped, ac *478 count of the distance from the child when first observed, about 600 feet. Appellee points out that the weight of the locomotive and cars was approximately 327 tons and that it proceeded through the town at more than the allowable speed. There is evidence to justify such a conclusion.
What influence ringing the bell and blowing the whistle would have on an eighteen months old child, we are not psychologists enough to tell. It is a matter of common knowledge that such a child has little, if any, appreciation of danger, all of which fortifies the premise that moving a freight train through an urban area should be done with such facility as to bring it under control within reasonable distance. The law requires this and more of automobile drivers. In this case the train ran more than 1,000 feet after the brakes were applied. In this country we place a higher value on human life than we ■do on speed, so it cannot be said to be unreasonable to require that locomotives be operated through incorporated municipalities at such a speed that they can be brought under control soon enough to avoid hazards under the. circumstances shown here. The crossing at which it occurred was regularly used by pedestrians and school buses. We have examined Bagdad Land & Lumber Co. v. Boyette, 104 Fla. 699, 140 So. 798; Tampa Electric Co., v. Knowles, 91 Fla. 1032, 109 So. 219; Atlantic Coast Line R. Co. v. Smith, Fla. 1951, 53 So.2d 301; Winner v. Sharp, Fla.1949, 43 So.2d 634, and other cases cited by counsel for both parties, but we do not think any of them rale the case at bar.
The only other question we deem essential to consider is the one 'charging the verdict to be excessive.
There was a time within the legal experience of the older members of the bar that a verdict of $10,000 in a case like this would have been reversed for excessiveness, but that time, like many other old concepts, has gone glimmering. In those good old days bacon was 5 cents per pound. A good hat could be had for 50 cents, a good pair of shoes for 75 cents and a good suit of clothes for $6. Verdicts usually respond to the value of current commodities; wages or other well recognized symbols of value. There . is no suggestion that the jury were influenced by considerations outside the record or were not schooled in the speed a dollar would be consumed in the open market or did not approach the assessment of damages in the orthodox .way. They may have exercised their prerogative to fix the amount of the verdict under ¿he comparative negligence rale, else it could have been larger. The court charged them on that doctrine.
Abuse..of. discretion is not shown so the judgment is affirmed.
Affirmed.
DREW, C. J., and SEBRING and ROBERTS, JJ., concur.