351 So.2d 1088 (1977)
Rita L. ADKINS et al., Appellants,
v.
SEABOARD COAST LINE RAILROAD COMPANY et al., Appellees.
No. 76-1364.
District Court of Appeal of Florida, Second District.
November 2, 1977.
As Modified On Denial of Rehearing November 30, 1977.
*1090 Nolan Carter, Orlando, for appellants.
Julian Clarkson, Fort Myers, for appellees.
HOBSON, Acting Chief Judge.
Appellants/plaintiffs seek reversal of the final judgment entered in their wrongful death action instituted against appellees/defendants. The final judgment reduced the jury's award of $100,000 damages to the decedent's estate to $20,000 because the jury's special verdict found the decedent 80% negligent. The final judgment also conformed to the jury's failure to award damages to the decedent's survivors. Appellants argue that they should be accorded a new trial on the issue of damages because inconsistent instructions may have confused the jury. We agree. Accordingly, we reverse the final judgment and remand the cause for retrial.
The decedent was killed when the vehicle he was driving was struck broadside by the railroad's freight train. At the time of the mishap the city's high school, which was situated adjacent to the railroad tracks, was releasing students. The exiting students backed up traffic on both sides of the tracks, causing traffic to proceed very slowly. Despite audible warnings from the approaching train, the decedent slowly drove his vehicle onto the tracks. Both Hennecy, the train's engineer, and Grimes, the brakeman acting as a look out, admitted knowing that the train was approaching a school zone and admitted noticing the traffic situation. Nonetheless, the train did not slow its 30-35 m.p.h. speed. The engineer also admitted seeing the decedent's car approaching but assumed it would stop before entering onto the tracks. The engineer engaged the train's emergency braking mechanism when the decedent's car pulled onto the tracks. However, it was not until over 1,000 feet past the point of impact with the automobile that the train grinded to a halt. Testimony at trial also indicated that a brakeman for appellee/railroad who was serving as a look out at the time of the accident had not received any special training on the safety aspects of the job he was performing.
Appellants argue that the estate is entitled to a new trial on damages because conflicting instructions on whether the jury should reduce the award by the decedent's proportion of comparative negligence may have confused the jury. The conflict arises between Florida Standard Jury Instruction 6.5(c) and the special verdict form submitted to the jury. The trial court instructed the jury that its awards should be "reduced in the same proportion that the negligence of William Adkins contributed to his death." The special verdict instructed the jury: "DO NOT REDUCE THESE SUMS BY ANY PERCENTAGE." The jury's verdict found the decedent 80% negligent and set damages at $100,000. Approximately four months after return of the verdict, the trial court entered its order awarding the decedent's estate $20,000. The reduction was apparently predicated upon a finding that the jury must have followed the instructions on the verdict form and rejected the court's oral instruction. We rule that this finding was unsupported by the record and that the trial court committed reversible error in entering judgment upon the reduced award.
We recognize the general rule that when the intent of a jury is apparent, a trial court does not err in entering judgment on the verdict in accordance with the jury's intent. Cory v. Greyhound Lines, Inc., 257 So.2d 36, 40 (Fla. 1972). However, where the jury is given contradictory instructions which may result in a conclusion which the jury may not otherwise have reached, there is no way to determine how the jury reached its verdict or what it intended. When a reviewing court is of the opinion that conflicting instructions may have misled or confused the jury, the cause *1091 must be remanded for new trial. Schlein v. Florida East Coast Railway Co., 339 So.2d 1142 (Fla. 3d DCA 1976).
In the instant case, it is not disputed that the jury instructions regarding reduction of damages were directly contradictory. There is nothing in the record indicating which of the two instructions the jury followed. In light of the nature of the damages recoverable and evidence admitted to establish these damages, and with due regard for the bifurcated function of the court and the jury, we cannot find that the amount of damages awarded by the jury was necessarily prior to reduction. We do find that the conflicting instructions may have confused the jury and that there is no acceptable way of now determining how the jury reached its verdict.
Appellants also argue that the survivors are entitled to a new trial on the issue of damages. They attack the final judgment's embodiment of the jury's failure to award damages to the survivors. Appellants' contention that the jury instructions also confused the jury about the manner of awarding damages to the survivors is based upon the following instructions:
"After having determined in dollars the total amount of damages sustained by the decedent's estate and survivors as a result of his death, you should award such total amount to the decedent's personal representative or for the benefit of his estate and survivors unless you find that William Adkins was negligent and that such negligence contributed as a legal cause to his death.
"Now, if you find that William Adkins was negligent and that such negligence contributed as a legal cause to his death, you will award to the decedent's personal representative for the benefit of his estate and survivors the total amount of the damages sustained by the estate and the survivors reduced in the same proportion that the negligence of William Adkins contributed to his death." (emphasis supplied)
Another instruction to this effect was also repeated when the trial judge paraphrased the general verdict form. These instructions are said to conflict with the instruction to the jury that "any amounts that you award the personal representative for the estate and for each survivor shall be separately stated in your verdict." The special verdict form had separate blanks for specification of the damages to each survivor. The jury entered the $100,000 award in the blank provided for specification of damages to the estate but made no entry in the separate blanks for the survivors' damages. The trial court entered judgment on this verdict, under which the appellants take nothing as survivors.
The repeated instructions indicated to the jury that it may award the total damages to the decedent's personal representative for the benefit of his estate and survivors. These charges conflicted with the instruction [as well as Section 768.22, Florida Statutes (1975)] that the jury should separately state the award for each survivor. We have no way to now determine whether the jury intended to award the survivors zero damages, or to award the survivors' damages to the personal representative for the benefit of the survivors without a jury apportionment. If the former was the jury's actual intent, they could have clearly so indicated by entering a zero or the words "zero" or "none" in the empty blanks. Nix v. Summitt, 52 So.2d 419 (Fla. 1951). We cannot make these determinations for the jury. See Atlantic Coast Line Railroad Co. v. Turpak, 225 So.2d 340 (Fla. 2d DCA 1969). Since the jury instructions may have resulted in a conclusion other than that which the jury intended, no judgment entered on the verdict would be proper. The issue of the survivors' damages must be re-litigated. Therefore, we need not consider appellants' contention that an award of zero damages to the survivors would be necessarily inconsistent with an award in favor of the estate.
The appellees challenge whether the error in the form of the verdict was properly preserved for appeal. We note that the appellants had no objection to the trial *1092 court's statement after the publication of the verdict that: "The court is going to let the (verdict) stand, $100,000." At that time the appellants apparently were not unhappy with their expected $100,000 award. However, four months later, when the trial court entered a judgment reducing the award to $20,000 and precluding the survivors from sharing in it, the appellants first had cause to object. To require the appellants to have predicted the reduction and to have objected at trial would be unreasonable.
This is not a case such as Savoca v. Sherry Frontenac Hotel Operating Co., Inc., 346 So.2d 1207 (Fla. 3d DCA 1977), where the objections to a reduction of an award after inconsistent instructions and to the failure of the jury to award damages on a derivative claim were not preserved. In Savoca, these objections were noted, even argued, prior to discharge of the jury and appellant's counsel more than acquiesced in the trial court's resolution of the disputes.
Appellants' third point on appeal regards the admission of the testimony of the decedent's alleged paramour with whom decedent had been living for six months prior to his death. The witness testified that shortly before his death the decedent promised that he would divorce his wife and marry the witness. She also testified to the decedent's credible explanation for having to wait. Appellants characterize this statement by the decedent as "sales talk," and argue that such evidence is not sufficiently probative of the declarant's intent without a manifestation of that intent in some affirmative action. This point presents what appears to be a question of first impression in this state. The question is whether evidence that the decedent was going to divorce his wife is admissible in a wrongful death action brought by the decedent's wife. Notwithstanding appellants' observation, we find the evidence sufficiently probative of the decedent's intent and probable future actions to warrant consideration by the jury in assessing the survivors' damages.
The evidence is logically relevant. The wrongful death statute provides for recovery by the decedent's survivors for their sentimental losses (i.e., loss of the decedent's companionship and protection and for the survivors' mental pain and suffering) and for their economic losses (i.e., their loss of support and services). Section 768.21, Fla. Stat. (1975). Evidence of domestic discord involving the decedent is probative of the extent of the survivors' mental pain and suffering and their loss of the decedent's companionship and protection. In Collins v. Florida Towing Corp., 262 So.2d 459 (Fla. 1st DCA 1972), a case analogous to the instant situation, the father of the deceased minor was seeking damages for the "intense mental pain and anguish" which he allegedly suffered at the loss of his child. He disputed the admission of evidence that the father had abandoned the child and the child's mother, and had left them no means by which he could be contacted. The First District held that the evidence was properly admitted. The plaintiff's regard for the welfare of his child was properly considered by the jury in assessing damages for the plaintiff's mental pain and suffering.
Evidence of the decedent's intent to divorce his wife and terminate voluntary support of his survivors is probative of the survivors' economic losses. We hasten to add that fairness to the survivors requires that the trial court admit proper evidence offered by the survivors to establish the amount of support which the decedent would have been legally obligated to contribute in the event of a divorce. The financial support generously contributed by a faithful and loving husband and father may be much greater than the begrudging remittances of a person compelled by court order to provide, at most, adequate support to his wife through temporary or permanent alimony, and to his children during their minority. This determination, however, is for the jury. Evidence on this issue is always subject to the rules of evidence limiting unnecessary evidence on a collateral issue.
*1093 A contrary ruling would authorize the perpetration of fraud upon the jury. In the case of Florida Central and Penninsular Railroad Co. v. Foxworth, 41 Fla. 1, 25 So. 338 (1899), the Florida Supreme Court recognized the importance of allowing the presentation of an honest and accurate picture of the marriage relationship between the decedent and the surviving spouse. There the court observed that the "jury may properly take into consideration the loss of the comfort, protection, and society of the husband in light of all the evidence in the case relating to ... the marital relations between the parties at the time of and prior to his death." (Emphasis added) 25 So. at 348. We cannot allow the wrongful death claimant to paint a rosy picture of the marital relationship while the defendants' hands are bound, preventing rebuttal. A jury should not be misled to believe that a marriage at or past its breaking point was as zealous as a honeymoon merely because the marriage partners had not sought legal dissolution prior to the decedent's death. We acknowledge the potential for abuse of evidence of domestic discord. Our legal system, however, provides many safeguards against such abuse. Impeachment of the witness testifying to the decedent's intent to divorce his wife is the established method of testing whether the decedent actually expressed such an intent. Rebuttal evidence can be presented to show that if the decedent expressed such an intent, it was not his true intent, or to show that he later changed his mind or would not have acted in accordance with this expressed intent.[1] A motion in limine would test not only threshold relevancy and whether a jury could reasonably believe that under the circumstances the expressed intent was honest, but also whether the probative value of the evidence is outweighed by danger of unfair prejudice.
Our decision that evidence of domestic relationship may be admissible is not out of step with the modern trend of authority. The well-reasoned opinion in the case of Allen v. Riedel, 425 S.W.2d 665 (Tex.Civ. App. 1968) admitted such evidence on the issue of economic and sentimental losses in a wrongful death action brought by the surviving wife and child. Accord, Peterson v. Pete-Erikson Co., 186 Minn. 583, 244 N.W. 68 (1932). See Annot. 79 A.L.R.2d 819 (1968), 22 Am.Jur. Death § 173 (1965).
Finally, the appellees argue that the trial court erred in denying appellees' motion for a directed verdict. The testimony elicited at trial supports the conclusion that the engineer and brakeman saw the traffic conditions and knew or should have known of the hazard but failed to exercise the due care of reducing the train's speed accordingly. There was substantial competent evidence that the appellees were negligent and that this negligence was a legal cause of the decedent's untimely demise. The trial court did not err in submitting the issue of the appellees' liability to the jury.
Therefore, we find that the trial court erred in giving the jury contradictory instructions, but did not err in admitting evidence of the decedent's domestic relationship or in denying appellees' motion for directed verdict. Since the error bears only on the issue of damages, the interests of justice do not require re-litigation of the issue of liability. Cf. Erwin v. Chaney, 160 So.2d 139 (Fla. 1st DCA 1964).
The final judgment entered in the court below is reversed and the case is remanded for a new trial on the issue of the amount of total damages suffered by the appellants. Once the total amount of damages has been determined, the trial judge will reduce the total damages by the decedent's previously determined comparative negligence (80%).
GRIMES and SCHEB, JJ., concur.
NOTES
[1] For instance, in the instant case the survivors introduced at trial a moving letter written by the decedent shortly before his death which indicated a rebirth of his love for his wife and family.