566 So.2d 1321 (1990)
FLORIDA EAST COAST RAILWAY CO. and Eddie Davis, Appellants/Cross-Appellees,
v.
Janie Ann GRIFFIN and Obadia Seymoure, As Personal Representatives of the Estate of Sharon Ivette Seymoure, a Minor, Deceased, Appellees/Cross-Appellants.
No. 88-2273.
District Court of Appeal of Florida, Fourth District.
August 22, 1990.
As Clarified on Denial of Rehearing October 12, 1990.
*1322 Love Phipps of Corlett, Killian, Hardeman, McIntosh & Levi, P.A., Miami, for appellants/cross-appellees.
Richard R. Kirsch, Plantation, Edward R. Blumberg of Deutsch & Blumberg, P.A., and James C. Blecke, Miami, for appellees/cross-appellants.
STONE, Judge.
Florida East Coast Railway Co. and Eddie Davis appeal a judgment entered on a verdict for the wrongful death of a thirteen-year-old child. Sharon Seymoure, one of several children attempting to cross the Florida East Coast tracks, tripped on the tracks and was struck by a freight train. The location was in an urban area near a school where children often ran across ahead of oncoming trains. We reverse because of error in denying appellants' motion for new trial.
There was evidence that one of the three girls racing to beat the train did stop without attempting to cross. Appellee, the decedent's mother, warned her child about the danger on that morning. Two teachers also warned her, and several police officers had visited her school to remind the children to only cross where there were crossing guards at a nearby intersection.
There also was evidence that the railroad and Davis, the train engineer, knew that children regularly crossed the tracks at that spot as a shortcut. There was disputed evidence that Davis first noticed the children running toward that crossing when the train was still some two thousand feet away. He commented to the conductor that he hoped that they wouldn't try to cross. The engineer did blow the whistle. He maintained that he first saw the children running along the right-of-way only four hundred feet before impact.
*1323 The conductor, who also served as an engineer on alternate days, testified that no effort was made to slow or stop the train despite the apparent danger. He opined that the brakes should have been applied considering the likelihood that the children would risk crossing. The railroad had previously been advised by the witness that a "slow order" was needed for that location at that time of day. There was also testimony that it would take between fourteen hundred feet and twenty-one hundred feet at the speed it was traveling to come to a complete stop. The child was approximately four hundred feet ahead of the train when she fell.
The jury found that Sharon was 20% negligent, the engineer 30% negligent, and the railroad 50% negligent. The trial court, in an order denying appellants' motion for new trial, made a very specific finding that no reasonable evaluation of the evidence would support a finding that the deceased child was less than 50% negligent and that the verdict that she was only 20% negligent is contrary to the manifest weight of the evidence. The trial court, however, held that it was bound by this court's opinion in John Sessa Bulldozing, Inc. v. Papadopoulos, 485 So.2d 1383 (Fla. 4th DCA 1986), and denied a new trial notwithstanding its findings.
The appellants argue that a new trial should have been granted where the comparative negligence percentage in the verdict is against the manifest weight of the evidence. They also assert that the decedent was the sole cause of the accident and that the jury was improperly permitted to consider the speed of the train.
In John Sessa Bulldozing, Inc. v. Papadopoulos, the trial court entered an additur after finding that it was against the manifest weight of the evidence to attribute more than 50% of the negligence to the plaintiff. This court, in reversing, recognized that apportioning negligence is "peculiarly within the province of the jury" and cautioned against substituting the court's judgment for that of the jury, adding that a new trial should not be granted unless "no reasonable jury could have reached the verdict." Id. at 1386. In that case, this court evaluated the evidence and determined that a finding by the trial court that the plaintiff could have been found 50% negligent, but not 70%, was arbitrary. See also St. Pierre v. Pub. Gas Co., 423 So.2d 949 (Fla. 3d DCA 1982).
In Rowlands v. Signal Const. Co., 549 So.2d 1380 (Fla. 1989), the supreme court recognized that a remittitur is not the proper remedy where a jury's allocation of comparative negligence is not supported by the evidence. The court reasoned that a failure to prove liability may not be cured simply by an adjustment of damages. However, the court also specifically recognized that the proper remedy, where the percentages of liability are found by the trial court to be contrary to the manifest weight of the evidence, is to order a new trial on all issues affected by the error. The supreme court cautioned that a new trial remedy should not be granted "merely because the trial court disagrees with the percentages," but "only because the percentages are against the manifest weight of the evidence." Id. at 1383. The court, in Rowlands, does not indicate that an appellate court, in reviewing an order granting a new trial under such circumstances, should apply any standard other than that normally applied where a new trial is granted on liability because the verdict is against the manifest weight of the evidence. See also Keith v. Russell T. Bundy & Assoc., Inc., 495 So.2d 1223 (Fla. 5th DCA 1986).
In Rowlands, the case was remanded to the trial court to consider whether the standard had been met. Here the trial court has already determined that issue and only failed to order a new trial because the court considered that it lacked the authority to do so. We note that the trial court did not have the benefit of Rowlands. Upon this record we cannot say that the trial court's finding as to the manifest weight of the evidence was an abuse of discretion. Therefore, the order denying appellants' motion for new trial is reversed and remanded for entry of an order granting appellants' motion for new trial. Cf. *1324 Ford Motor Co. v. Kikis, 401 So.2d 1341 (Fla. 1981); Cloud v. Fallis, 110 So.2d 669 (Fla. 1959); Myers v. Atlantic Coast Line R.R. Co., 86 So.2d 792 (Fla. 1956); Bullard v. Canale, 260 So.2d 237 (Fla. 4th DCA 1972); Department of Corrections v. Romero, 524 So.2d 1032 (Fla. 5th DCA), rev. denied, 534 So.2d 401 (1988).
Because a new trial will be conducted, it is necessary that we address two of the other issues raised on appeal.
Generally, a railroad is not liable for failure of its train to slow or stop simply because a pedestrian or a vehicle approaches the tracks ahead. The engineer may normally assume that such person will either stop or cross safely. E.g., Lerner v. Seaboard Coast Line R.R. Co., 594 F. Supp. 963 (S.D.N.Y. 1989) (applying Florida law); Martin v. Rivers, 72 So.2d 789 (Fla. 1954); Atlantic Coast Line R.R. Co. v. Timmons, 36 So.2d 430 (Fla. 1948). However, there is a duty to slow down or stop for dangerous conditions appearing ahead. Cf. Florida East Coast Ry. Co. v. Gonsiorowski, 418 So.2d 382 (Fla. 4th DCA 1982), rev. denied, 427 So.2d 736 (Fla. 1983); Florida East Coast Ry. Co. v. Schweida, 151 So.2d 665 (Fla. 3d DCA), cert. denied, 156 So.2d 858 (1963). Such a dangerous condition may become apparent before the ultimately injured person proceeds onto the tracks. Cf. Adkins v. Seaboard Coast Line R.R. Co., 351 So.2d 1088 (Fla. 2d DCA 1977); Atlantic Coast Line R.R. Co. v. Ward, 81 So.2d 476 (Fla. 1955). In Adkins, the decedent was killed when the train struck his car broadside. The traffic from an adjacent high school was backed up on both sides of the tracks, causing traffic to proceed slowly. The train crew admitted that they knew they were approaching a school area but kept the train speed at 30-35 m.p.h. In addition, the engineer admitted seeing the car but assumed it would stop before entering the tracks. The Second District stated:
The testimony elicited at trial supports the conclusion that the engineer and brakeman saw the traffic conditions and knew or should have known of the hazard but failed to exercise the due care of reducing the train's speed accordingly.
The appellants also argue that the federal government, by adopting the Federal Railroad Safety Act, has preempted the field with respect to train speed. We recognize that subsequent to the act municipalities may not impose speed limits more stringent than federal regulations allow, and that this may impact on the admissibility of evidence in a negligence action in order to avoid doing indirectly what cannot be done directly without conflicting with the federal law. See, e.g., Sisk v. Nat'l R.R. Passenger Corp., 647 F. Supp. 861 (D.Kan. 1986); Chesapeake & Ohio Ry. v. City of Bridgman, 669 F. Supp. 823 (W.D. Mich. 1987). In Sisk, the court determined that the federal act preempted a claim that a train, proceeding within the federal limit, was traveling too fast.
We reject the appellants' contention that the federal act has preempted consideration of negligent conduct of a railroad and its agents when faced with a dangerous condition or event, notwithstanding that the acts of negligence involve a failure to reduce speed below the maximum limit established by federal law. Cf. Marshall v. Burlington Northern Inc., 720 F.2d 1149 (9th Cir.1983); Louisville & Nashville R.R. Co. v. Hickman, 445 So.2d 1023 (Fla. 1st DCA 1983), rev. dismissed, 447 So.2d 887 (Fla. 1984). Certainly it was not the intent of the act to insulate railroads from liability for specific tortious acts in the face of hazardous conditions. Therefore, on retrial, the jury may properly consider evidence of the railroad's failure to issue a slow order and the engineer's failure to reduce speed or stop.
REVERSED AND REMANDED.
DOWNEY and GARRETT, JJ., concur.

ON MOTION FOR REHEARING
ORDERED that Appellees' September 5, 1990 Motion for Rehearing and for Rehearing en banc is denied, except that the opinion *1325 is clarified to provide that the new trial ordered is on liability only.