257 So.2d 36 (1971)
Melba I. CORY, As Surviving Widow of Fay C. Cory, Deceased and As Executrix of the Estate of Fay C. Cory, Deceased, Petitioner,
v.
GREYHOUND LINES, INC., a California Corporation, Respondent.
No. 40880.
Supreme Court of Florida.
December 8, 1971.
Rehearing Denied February 15, 1972.
*37 Alan R. Schwartz, of Horton & Schwartz, Miami, and James H. Nance, Melbourne, for petitioner.
J. Compton French and Thorwald J. Husfeld, of Landis, Graham, French, Husfeld, Sherman & Ford, DeLand, for respondent.
ADKINS, Justice.
By petition for certiorari, we have for review a decision of the District Court of Appeal, Fourth District (Cory v. Greyhound Lines, Inc., 243 So.2d 478), which allegedly conflicts with a prior decision of the District Court of Appeal, Second District (Atlantic Coast Line Railroad Company v. Turpak, 225 So.2d 340), on the same point of law. Fla. Const., art. V, § 4, F.S.A.
In the early morning hours of July 12, 1966, a greyhound bus, heading north through the fog, struck an East Volusia Mosquito Control District fogging machine, creeping slowly in the same direction. In the resulting crash and gasoline explosion, Fay C. Cory, the operator of the fogging machine was burned to death. His widow, Melba I. Cory, brought two separate actions against Greyhound Lines, Inc., to recover damages arising out of Mr. Cory's injuries and death. One action was brought individually under the wrongful death statute. The other action was brought by Mrs. Cory as Executrix of her deceased husband's estate under the survivor statute.
The cases were consolidated for jury trial and the following verdicts were returned:
"We, the jury, find for the Plaintiff, Melba I. Cory, as the surviving widow of Fay C. Cory, and against the Defendant, Greyhound Lines, Inc., and assess her damages in the amount of $11,192.00. So say we all. Signed G. Robert Jarrett, Foreman, January 14, 1970."
"We, the jury, find for the Plaintiff, Melba I. Cory, as Executrix of the Estate of Fay C. Cory, deceased, and against the Defendant, Greyhound Lines, Inc., and assess her damages in the amount of $147,000.00. So say we all. Signed G. Robert Jarrett, Foreman, dated January 14, 1970."
The exact amount requested in the survival case ($11,192.00) was assessed in the wrongful death action. The jury assessed $147,000.00 (slightly more than had been requested in the wrongful death case) in the survival action.
Thereupon, the following occurred:
"THE COURT: Let me see the verdicts again please?
"Could Counsel approach the bench please? There is no testimony of this amount of the Executrix Estate. I will call this to their attention and they can retire and consider their verdicts.
"(This concludes discussion at the bench)
"THE COURT: Ladies and Gentlemen, it appears to the Court that there is no testimony that would warrant the verdict for Melba I. Cory as Executrix of the Estate in the sum of $147,000.00. Likewise, as far as the surviving widow, *38 of course, this is up to you, and the Court is going to send you back to the juryroom to deliberate further with regard to the awarding of damages to the widow and awarding of damages to the estate.
"In other words, the Court is of the opinion that certainly it appears to the Court that the verdict for the widow is approximately the sum that was asked for by the executrix, by the personal representatives of the estate, and it appears that perhaps you have confused the two, and I'm going to ask you to return to the juryroom and deliberate further, based upon the instructions I have just given.
"You may return to the juryroom."
The jury returned to the courtroom and rendered the following verdicts:
"We, the jury, find for the Plaintiff, Melba I. Cory, as the surviving widow of Fay C. Cory, and against the Defendant, Greyhound Lines, Inc., and assess her damages in the amount of $80,192.00. So say we all, Mr. G. Robert Jarrett, Foreman, Jauary 14, 1970."
"We, the jury, find for the Plaintiff, Melba I. Cory, as Executrix of the Estate of Fay C. Cory, deceased, and against the Defendant, Greyhound Lines, Inc., and assess her damages in the amount of $78,000.00. So say we all, Mr. G. Robert Jarrett, Foreman, January 14, 1970."
The jury was then polled and a discussion took place out of the presence of the jury. Mr. James H. Nance, the attorney for plaintiff, suggested that the jury had put the Executrix award on the wrongful death verdict and the wrongful death award on the Executrix verdict when they originally returned. Thereupon, the following occurred:
"MR. HUSFELD: If the Court please, what Mr. Nance is asking is to tell them what damages should be in each case. It is capricious, and I feel that this Court should at this time declare a mistrial and declare the verdicts not the result and judgment of the jury, but capriciously done.
"THE COURT: Frankly, I was in accord with the first verdict, that it appeared to me, that because they had two, that they had them backwards, but after they went out, though Counsel asked for, if I remember, $11,192.00, if they find pain and suffering to warrant the larger verdict, I'm of the opinion now, that the Court has gone about as far as it can go.
"MR. NANCE: Judge, obviously the jury is confused on the element.
"THE COURT: That may be true Counsel, but it also may not be true, and I'm not sure of my authority to pry into this jury's deliberations further. I thought I had made it clear what appeared to the Court, and unless Counsel is in accordance to what I do next, I'm inclined to bring this jury back in and discharge them." (Emphasis supplied.)
The defendant filed motion for a new trial on the issues of both liability and damages. The plaintiff filed a motion for entry of final judgments in which she sought the entry of final judgments in accordance with the alleged intention of the jury as incorrectly expressed, in the first verdicts, by the entry of a judgment of $147,000.00 for the plaintiff in the wrongful death case, and $11,192.00 for the plaintiff's estate in the survivor case. The trial judge denied plaintiff's motion for entry of final judgments and granted defendant's motion for a new trial on the issue of damages alone. The order stated:
"That there is no reason to disturb the jury's findings as to the questions of liability, the Court further finds
"That the verdicts may be based upon confusion in the minds of the jurors as to elements of damages. The Court `thinks' that the jury intended the original verdict to render the sum requested *39 in the Executrix verdict ($11,192.00) and the sum of $147,000.00 in favor of the Surviving Widow. Upon being sent back to the Jury Room with the verdicts, it appears that the jury took $69,000.00 from the Executrix verdict and added it to the widow's verdict, and the Court cannot ignore the fact that approximately $69,000.00 was the sum testified to by Dr. Blodgett as the amount of damages suffered by the loss of Fay Cory's supervision of the real property known as Cory Estates, but the Court is not sufficiently certain of this to rule that the amendments to the verdicts would be correcting a clerical error and determines that justice would best be served by reconsideration by another jury on the question of damages only  (Atlantic Coast Line Company v. Turpak, 225 So.2d 340)." (Emphasis supplied.)
Plaintiff filed a motion for rehearing which was accompanied by the affidavits of five jurors and counsel's affidavit as to what he had been told by the sixth juror concerning the jurors' intentions in returning the verdict. The motion for rehearing was denied. The District Court of Appeal, Fourth District, in a "per curiam" order affirmed the order granting defendant a new trial on damages only.
For conflict petitioner refers us to Atlantic Coast Line Railroad Company v. Turpak, supra. In that case the jury returned a verdict for the widow as Executrix, and a separate verdict for the widow in her individual capacity. These verdicts were accepted and the jury was discharged. The Court allowed the foreman to be interviewed and plaintiff's attorney gave an affidavit purporting to relate the result of the interview with the foreman. On the basis of this, the trial court undertook to reconstruct the verdict by lumping the total of both verdicts into one for the widow and awarding zero dollars' verdict for the Executrix. The defendant appealed and Mrs. Turpak, the widow, contended the jury made an "inadvertent clerical error" and that "there was no dispute concerning the jury's true intent." In reversing, the District Court of Appeal, Second District, said:
"Mrs. Turpak cites numerous cases in support of her proposition * * *. These cases hold that the Court has power to correct a verdict where the jury has incorrectly apportioned damages, erroneously transposed the amounts in consolidated actions, or has made other clerical errors in rendering the verdict or verdicts. (Emphasis supplied.)
"The affidavit of Mrs. Turpak's counsel reflects that the jury foreman indicated to him that the true intent of the jury was `to enter the total of both verdicts for the support of the wife and children' and that this was so apportioned because of the jury's erroneous belief that it should enter `past damages' in the widow's action and `future damages' in the Executrix's action; and that the amount of $4,102.00 for medical and general expenses and property damage was not included in either verdict because of the jury's erroneous belief that this amount had been `stipulated upon' by the parties and therefore did not need to be set forth in the jury verdict.
"This, then, was not a mere clerical error, but a misconception of the jury or an error in arriving at its verdict. There is an irresistible conclusion that the jury was confused, and also that the verdicts as conformed do not reflect the true intent of the jury, despite the belief of the foreman that it did. Some of the elements of damage which should have been considered in the Executrix's case were completely omitted from the original verdict as well as the conformed verdict. There is no indication as to what portion of the `past damages' were awarded for conscious pain and suffering of the decedent as a result of the injuries. The trial Judge did not correct the verdicts by merely transposing the amounts in the two actions, or reapportioning the damages, but entered a judgment for the widow in the Wrongful *40 Death case in the amount of the combined total of the original verdicts and awarded her zero dollars in the Survival action." (Emphasis theirs) (pp. 342, 343)
If, in the case sub judice, it appears that the jury, in its first verdicts, incorrectly apportioned damages, erroneously transposed the amounts in consolidated action, or made other clerical errors in rendering the verdicts, the Court should have corrected the verdicts and there is conflict with Atlantic Coast Line Railroad Company v. Turpak, supra. On the other hand, if the verdicts were the result of misconceptions of the jury as to the facts and law involved, or confusion, and do not reflect the true intent of the jury, there is no conflict.
The general rule is that a verdict is the determination of a jury upon the testimony submitted to them, and should be construed with reference to the issue made by the pleading. Wismer v. Alyea, 103 Fla. 1102, 138 So. 763 (1932). When the intent of the jury is apparent, their verdict will be sufficient to sustain a judgment entered in conformity with the intent of the verdict. Buffett v. Geldhauser, 155 So.2d 844 (Fla.App.3d, 1963). Accord: 25 F.L.P., Verdict, § 5; 53 Am.Jur., Trial, § 1094; 89 C.J.S., Trial, § 515. See also Channell v. State, 107 So.2d 284 (Fla.App.2d, 1958), a criminal case, where the Court said that any words which impart beyond a reasonable doubt the meaning and intention of the jury are sufficient, and all fair intendments will be effectuated to sustain the verdict.
The intentions of the jury in the case sub judice were obvious and apparent upon the face of the verdicts it actually returned. In the initial verdicts the precise amount requested in the survival case was awarded in the wrongful death case. The insertion of the $147,000.00 in the survival verdict demonstrated beyond question that the jury simply transposed or reversed the amounts to be returned in the two consolidated actions. The verdicts total $158,192.00.
When the second verdicts were rendered some of the figures were transposed by the jury, but the same total of $158,192.00 was assessed. Under these circumstances there can be no doubt that the jury's intention was to award $147,000.00 for the elements properly recoverable in the wrongful death case and $11,192.00 for the elements properly recoverable in the survival case.
In Smith v. Philadelphia Transportation Company, 173 F.2d 721 (C.C.A.3d, 1949), wrongful death and survival actions were brought by the parents and the estate of a deceased child. The jury placed the respective damage figures in the wrong spaces, but the trial judge corrected the forms to reflect the jury's intent. In affirming, the Court said:
"The last point has to do with the verdict in favor of the parents for the death of the child. Two claims are involved. The first is a survival action by the administrator of the child's estate. In that claim the basis of recovery in Pennsylvania is the economic value of the life of the child as measured by the probable net earnings during his life expectancy after age 21, reduced to present value. The second is a wrongful death claim, in which recovery is limited to financial loss sustained by the parents.
"In answer to the specific interrogatories, the jury awarded damages of $500 to the administrator in what was necessarily the claim based on the survival statute, and $10,000 in the claim based on the wrongful death statute. The error is obvious, for the amount claimed for wrongful death was only $275 for medical and funeral expenses plus $5000 for estimated loss of earnings of the child to age 21. The financial position of the Fenimores and the testimony showing that the boy would have attended college indicate clearly that the claim for loss of earnings during his minority was a weak one.
"In this situation, we think that the jury reversed its answers to interrogatories *41 6 and 7. The mistake is easily remedied by setting the answers opposite the proper questions. This is, of course, a procedural matter in which we are free to follow our own rule, but we note that the Pennsylvania Supreme Court has done exactly the same thing in a recent case. The error is harmless and the total effect is the same." (pp. 726, 727)
Even after the reception of a verdict, a party may move the Court to mould or amend it so as to make it conform with the jury's apparent, but unexpressed, intention. This, of course, is within the sound discretion of the Court. See Maize v. Atlantic Refining Company, 352 Pa. 51, 41 A.2d 850 (1945). As stated by the Supreme Court of Massachusetts in Minot v. City of Boston, 201 Mass. 10, 86 N.E. 783, 25 L.R.A.,N.S., 311:
"There is no doubt of the power of the court to amend a verdict after the discharge of the jury, and even after the end of the term at which the case was tried. * * * But there is one important limitation to this rule, and that limitation is that the amendment in all cases must be such as to make the verdict conform to the real intent of the jury. `The judge cannot, under the guise of amending the verdict, invade the exclusive province of the jury or substitute his verdict for theirs.' Acton v. Dooley, 16 Mo. App. 441, 449. After the amendment the verdict must be not merely what the judge thinks it ought to have been, but what the jury intended it to be. Their actual intent, and not his notion of what they ought to have intended, is the thing to be expressed and worked out by the amendment."
Smith v. Tang, 100 Ariz. 196, 412 P.2d 697, involved a situation in which the jury reversed damages awarded to the plaintiff in two separate causes of action against the defendant. The Supreme Court of Arizona affirmed the trial judge's action realigning the verdicts, saying:
"Where a verdict is manifestly irregular or defective the trial court may put the verdict in such form as to conform to the intention of the jury, when the intention can be ascertained with certainty. Southern Pacific Ry. Co. v. Mitchell, 80 Ariz. 50, 292 P.2d 827 (1956). There is little doubt that the jury reversed the causes of action in this case as shown by the above facts. The jury's intent was clearly demonstrated by their answer to a written interrogatory submitted by the court which stated in substance that the deceased husband failed to support and maintain plaintiff in accordance with the ante-nuptial agreement. The trial court had the power to grant plaintiff's motion to conform the verdict to the intention of the jury by reversing the causes of action." (p. 701)
Cases from numerous jurisdictions are cited in support of the following statement found in Annotations, 49 A.L.R.2d 1328, on page 1336:
"If by reference to the entire record in the case and all of the pleadings, or from data found by the jury, a definite sum can be fixed, judgment on the verdict should be entered for such fixed and definite amount."
In the case sub judice, the jury in its first verdict erroneously transposed the amounts in the consolidated actions. The jury's determination to award a total sum of $158,129.00 was further expressed by the second verdict. The intentions of the jury could have been effectuated by merely transposing the amounts in the two actions as expressed in the first verdicts or reapportioning the damages.
Plaintiff further contends that the affidavits attached to the motion for rehearing conclusively resolve any doubt about the intention of the jury in returning the verdicts. Respondent questions the procedure which was followed in securing the affidavits. We find it unnecessary to pass upon *42 the propriety or sufficiency of the affidavits.
The decision of the District Court of Appeal is quashed and the cause is remanded with directions to further remand same to the trial court with directions to grant plaintiff's motion for final judgments and enter judgments in the amount of $147,000.00 for Mrs. Cory, individually, and for $11,192.00 for Mrs. Cory, as Executrix of her husband's estate.
It is so ordered.
ROBERTS, C.J., and ERVIN, CARLTON, BOYD and DEKLE, JJ., concur.