481 So.2d 1241 (1985)
William PHILLIPS, Howard Jones, William Starr, Robert Edwards, Russell Warner, Buck McClennen, George Lewis, et al., As Trustees of the International Association of Bridge, Structural and Ornamental Iron Workers Local 272 Annuity Pay Plan, Appellants/Cross-Appellees,
v.
Louis C. OSTRER, Eugene Bowen, Martin Bessell, Michael Burke, Michael Famigliatti, Thomas Kilgellon, Charles Baker, John Nord, and Insurance Company of North America, Appellees/Cross-Appellants.
No. 83-2686.
District Court of Appeal of Florida, Third District.
December 31, 1985.
Rehearing Denied February 11, 1986.
*1243 Kurzban, Kurzban & Weinger and Steven Weinger, Miami, for appellants/cross-appellees.
Welbaum, Zook, Jones & Williams and Betsy L. Warwick, Miami; Ackerman, Bakst, Gundlach, Lauer & Zwickel, West Palm Beach; Joseph C. Segor; Bercuson, Cahan, Weksler & Lasky and Bernard Weksler, Miami, for appellees/cross-appellants.
Before BARKDULL, BASKIN and JORGENSON, JJ.
BASKIN, Judge.
Appellants were the trustees of the International Association of Bridge, Structural & Ornamental Iron Workers Local 272 Annuity Pay Plan [Annuity Pay Plan] on March 13, 1978, when they instituted an action against appellees: the former trustees; Louis Ostrer, the consultant for and administrator of the Annuity Pay Plan; and Insurance Company of North America [INA], the issuer of an honesty bond. They sought damages for fraud, negligence, and breach of fiduciary duties in connection with the purchase of insurance policies with funds contributed to the Annuity Pay Plan.[1] The jury returned verdicts in their favor and the court entered a final judgment. In response to post-trial motions, however, the trial court entered orders which reduced the amount of the final judgment. Appellants challenge the trial court's ruling that the verdicts entered against the former trustees and Louis Ostrer constituted a triple recovery. In addition, appellants contend that the trial court's reduction of the judgment against INA was an unwarranted interference with the jury's findings. Agreeing with appellants' contentions regarding the judgment entered against the former trustees and the administrator of the Annuity Pay Plan, we reverse the order reducing the judgment as to them. We affirm, however, the trial court's reduction of the amount of the judgment against INA, but reinstate the court's ruling that the former trustees and INA are jointly and severally liable to appellants.
In cross-appeals, appellees argue that they should have prevailed because the collective bargaining agreement mandated the purchase of whole life insurance policies; the evidence is insufficient to support the jury verdict; the evidence regarding compensatory damages is too speculative to support the verdict; an exculpatory clause in the trust agreement insulated the trustees from liability; prejudicial misconduct by opposing counsel deprived them of a fair trial; and the trial court should have dismissed the claims against them as a matter of law. In addition, INA asserts that it was exonerated from liability when the bond's cancellation provisions became effective.[2] We find no basis for granting the relief sought in the cross-appeals.
*1244 The Annuity Pay Plan was created as a result of industry-wide collective bargaining between negotiating teams for Iron Workers Local 272 and the management association. The purpose of the Annuity Pay Plan was to establish a severance fund and to provide iron workers with tax benefits gained from deferred compensation. Appellants sought to prove that the former trustees, who administered the fund, consulted with and were advised by Louis Ostrer, a convicted felon whose license had been suspended,[3] and that they fraudulently or negligently followed Ostrer's recommendations, purchasing individual whole life insurance policies for each person who performed two hours of iron work in Local 272 jurisdiction after May, 1972. They obtained no competitive bids and did not discuss with any other insurance consultant the type or amount of insurance necessary to cover participants. The former trustees spent 55% to 60% of the contributed funds on insurance premiums despite IRS prohibitions against the expenditure of more than 49.9% of contributions. An actuarial study disclosed that the Annuity Pay Plan was financially unsound and would become insolvent unless substantial changes were instituted. Ignoring the actuarial study, the trustees continued to follow Ostrer's plan, even though they were aware of a citation dated April 18, 1974, filed by the State of New York Insurance Department against Ostrer, trustees of a fund similar to the Iron Worker's Annuity Pay Plan, and others. The citation explained that it was improper for the New York trustees to deal with Ostrer because of his former convictions and license revocation and that the purchase of individual whole life insurance policies was excessively costly and generated unconscionably high commissions for Ostrer. After discussing the citation at a trustees' meeting on June 24, 1974, and expressing concern for their individual liability, the former trustees voted unanimously to purchase an additional insurance policy for each iron worker, rejecting lower-priced policies in favor of the policies recommended by Ostrer.
The Annuity Pay Plan purchased a Blanket Honesty Bond from INA, effective March 1, 1974. The Bond protected the Annuity Pay Plan for "any loss of other property ... through any fraudulent or dishonest act or acts committed by any employee ... during the term of the Bond." In the ensuing litigation, the court, in accordance with these provisions, granted INA a partial summary judgment, limiting its liability for loss to acts committed after the effective date of the Bond.
Appellants sought damages in excess of $1 million for fraud, breach of fiduciary duty, and negligence. The trial culminated in a jury verdict totaling $1,195,000, including $110,000 in punitive damages against the former trustees and Ostrer. Interrogatory verdicts instructed the jury, first, to assess total damages and then to state which of the defendants committed fraudulent acts. Their next task was to calculate the total amount of damages to be recovered for fraud as well as the amount recoverable from each defendant. The jury received similar verdict forms for the claims based on breach of fiduciary duty and on negligence. The jurors were then asked to determine whether any defendant should be held liable for punitive damages. Next, the jury was instructed to decide whether INA was liable for each defendant's actions, to determine the amount of INA's liability, and to state the date on which each trustee committed any fraudulent act giving rise to INA's liability. Finally, the jurors were asked to decide the date the "Annuity Pay Plan first learned of the dishonest or fraudulent acts." The jury found Ostrer liable for negligence and *1245 fraud, and each former trustee, except John Nord, liable for fraud, breach of fiduciary duty, and negligence; it found INA liable for the trustees' fraudulent or dishonest acts occurring after the effective date of its bond. Complying with the directives in the verdict forms, the jury apportioned the total damage award among the counts and defendants.
The trial court entered judgment in accordance with the jury's verdicts but, upon post-trial motions, ruled that the jury verdicts against the former trustees and Ostrer constituted triple recovery. The trial court then reduced the award of compensatory damages from $1,085,000 to $246,667,[4] relying upon Besett v. Basnett, 437 So.2d 172 (Fla. 2d DCA 1983), as legal authority for its reduction. The court also reduced the verdict against INA from $345,000 to $99,629.27,[5] finding that INA was liable only for the premiums paid on policies purchased after the effective date of the honesty bond.
We first direct our attention to the trial court's citation of Besett and the reduction of the judgment against the former trustees and Ostrer on the ground that the awards constituted triple recovery. According to Besett, verdicts based on multiple theories of recovery which contain the same elements of damage should result in a judgment predicated on a single count. While Besett may lead to reduction in some situations, we find it inapplicable to the facts and circumstances before us. In Besett, the jury considered negligence and fraud claims and determined that damages were proper on each count against a real estate broker who misrepresented the amount of land purchased. The Besett court held that because the proof necessary to establish both fraud and negligence was the same, only the greater award, based on fraud, should stand. In the case before us, however, the jury did not combine multiple awards for a single claim. Instead, the jury arrived at the total amount of the recovery first and, in response to the court's specific instructions, divided the damages into separate awards for the individual counts. The instructions in the interrogatory verdicts left the jury no alternative but to apportion the total award  no matter what sum it found represented the damages sustained.[6] In addition, the interrogatories reflect the jury's finding that the former trustees' actions evolved from negligence into fraud after the lapse of a period of time. Thus, the separate proof establishing liability for damages based on fraud and negligence precludes a ruling that appellants received a multiple award for a single claim.[7]
The facts of this case distinguish it from Air Florida, Inc. v. Hobbs, 477 So.2d 40 (Fla. 3d DCA 1985). In Air Florida, this court held that although the evidence was sufficient to support the total award, there was no evidence to sustain the division of the award. The total amount of the jury award in Air Florida could be determined only by adding the damages incurred for the different types of economic losses sustained. Here, however, the jury was instructed to arrive at a total damage award and then to apportion the award among the counts and defendants.
This case differs from the cases cited by appellees in support of the trial court's reduction of the verdict. Atlantic Coast Line Railroad v. Saffold, 130 Fla. 598, 178 So. 288 (1938); Besett; ITT-Nesbitt, Inc. v. Valle's Steak House, 395 So.2d 217 *1246 (Fla. 4th DCA), review dismissed, 408 So.2d 1096 (Fla. 1981). In the cited cases, the damage award was greater than necessary to compensate the injured party. Here, however, the total award was established by the evidence. When the total award is supported by substantial, competent evidence, the jury's apportionment of damages does not affect the integrity of the verdict. See R.W. King Construction Co. v. City of Melbourne, 384 So.2d 654 (Fla. 5th DCA 1980).
The record supports the amount of compensatory damages awarded by the jury. The purpose of an award of compensatory damages is to make the injured party whole, Mercury Motors Express, Inc. v. Smith, 393 So.2d 545, 547 (Fla. 1981), or to place him in the position in which he would have been had no wrongful act occurred. Ashland Oil, Inc. v. Pickard, 269 So.2d 714 (Fla. 3d DCA 1972), cert. denied, 285 So.2d 18 (Fla. 1973). The award of compensatory damages of $1,085,000 is so close to the amount requested by appellants that it provides a clear indication of the jury's intent to follow appellants' suggestions in determining the amount of compensatory damages. See Cory v. Greyhound Lines, 257 So.2d 36 (Fla. 1971). When the intent of the jury is apparent, the verdict will sustain a judgment entered in conformity with that intent. Cory; Adkins v. Seaboard Coastline Railroad, 351 So.2d 1088 (Fla. 2d DCA 1977); Buffett v. Geldhauser, 155 So.2d 844 (Fla. 3d DCA 1963). The determination of the amount of damages is a matter solely within the province of the jury. Jefferson Realty v. United States Rubber Co., 222 So.2d 738 (Fla. 1969); South Miami Hospital v. Sanchez, 386 So.2d 39 (Fla. 3d DCA 1980); Sunrise Point, Inc. v. Reliance Realty, Inc., 371 So.2d 674 (Fla. 3d DCA 1979).
Courts should construe verdicts to carry out the jury's intentions. Advance Co. v. Albert, 216 So.2d 474 (Fla. 3d DCA 1968), cert. denied, 225 So.2d 526 (Fla. 1969). Although a jury may award a greater sum than the trial court deems appropriate, the court may not interfere unless the sum is so large that it indicates the jury must have been under the influence of passion, prejudice, or gross mistake. Lassitter v. International Union of Operating Engineers, 349 So.2d 622 (Fla. 1977) (on reh'g). A jury verdict may be set aside by the trial court only where the record affirmatively shows the impropriety of the verdict or the trial judge determines that the jury was influenced by considerations outside the record. Laskey v. Smith, 239 So.2d 13 (Fla. 1970); Tejon v. Broome, 261 So.2d 197 (Fla. 2d DCA), cert. dismissed, 265 So.2d 50 (Fla. 1972). If evidence supports an award of damages, the award may not be disturbed. Hendel v. Rudnick, 78 So.2d 709 (Fla. 1955); Allied Chemical Corp. v. Eubanks Industries, Inc., 155 So.2d 740 (Fla. 3d DCA 1963). A review of the record reveals sufficient evidence to support the amount of the compensatory damage award. Thus, in conformity with pertinent legal principles, we hold that the trial court erred in reducing the verdicts. We discern no record support for the amount computed by the trial court because it bears no relation to the amount of damages established by any party.
We find error, however, in the jury's inclusion of interest as an element of damages. Although counsel for appellants presented evidence and argued that five per cent compounded interest should be added to the amount recovered, the trial court subsequently disallowed interest as an element of damages and did not instruct the jury to consider interest in arriving at its verdict. Affirming the principle that a jury may not apply a measure of damages which is not contained in the trial court's instructions, Alonso v. Fernandez, 379 So.2d 685 (Fla. 3d DCA 1980), we hold that the jury erred in computing interest on the damage award. We therefore deduct the amount added for interest and, based on the evidence in the record, find that $700,000 represents the proper amount of appellants' compensatory damages.
Next, we address the trial court's reduction of INA's liability under the honesty bond. INA provided coverage for losses *1247 arising from fraudulent or dishonest acts committed during the term of the bond. Neither negligent nor fraudulent acts committed prior to the term of the bond fell within its purview. By the clear terms of the policy, the honesty bond was an occurrence bond, protecting the policy holder for acts done while the policy was in effect, rather than for losses suffered or claims made during that time. To determine whether the trial court erred in reducing the amount of damages awarded against INA, we must decide which acts of the trustees constituted "occurrences" giving rise to liability. The trustees made three separate purchases of insurance; two purchases were made prior to the effective date of the honesty bond, and one purchase occurred during the term of the bond. Premiums were paid on all the policies, however, while the bond was in effect. Appellants argue that the payments of premiums were the occurrences giving rise to INA's liability. We reject that argument.
Florida applies the "cause theory" to determine which acts are occurrences triggering an insurance company's liability. American Indemnity Co. v. McQuaig, 435 So.2d 414 (Fla. 5th DCA 1983). The act which causes the damage constitutes the occurrence. McQuaig. Applying the causation test to the facts of this case, we hold that the only fraudulent or dishonest occurrence which took place during the effective term of the bond was the purchase of the third group of insurance policies. See Business Interiors, Inc. v. Aetna Casualty & Surety Co., 751 F.2d 361 (10th Cir.1984); Aetna Casualty & Surety Co. v. Medical Protective Co., 575 F. Supp. 901 (N.D.Ill. 1983); Appalachian Insurance Co. v. Liberty Mutual Insurance Corp., 507 F. Supp. 59 (W.D.Pa. 1981), aff'd, 676 F.2d 56 (3d Cir.1982). But see Buccino v. Continental Assurance Co., 578 F. Supp. 1518 (S.D.N.Y. 1983). The payments of premiums on policies purchased prior to the effective date of the bond were merely ministerial acts and did not give rise to liability.
Accordingly, we affirm the trial court's reduction of the judgment entered against INA and hold that the amount of damages properly chargeable to INA is $99,629.27. We reinstate, however, the trial court's determination in the original judgment that the former trustees and INA are jointly and severally liable for the award entered against INA.
In summary, we reverse the order reducing the judgment entered against the former trustees and Ostrer; we affirm the trial court's reduction of the amount of the judgment against INA; and we reinstate the trial court's ruling that the former trustees and INA are jointly and severally liable for the amount of the judgment entered against INA.
Affirmed in part; reversed in part; remanded for further proceedings consistent with this opinion.

APPENDIX

 The Verdict and the Jury Interrogatories and Answers are as follows:
 VERDICT
 We, the Jury, find for the Plaintiff and assess its total damages at
 $ 1,195,000.00 
 THE TOTAL AMOUNT OF YOUR VERDICT, IF ANY, SHOULD REFLECT THE TOTAL
 SUM TO BE AWARDED TO THE PLAINTIFF AND THE COURT IN ENTERING JUDGMENT
 WILL ALLOCATE THAT TOTAL AMOUNT AGAINST THE DEFENDANTS BASED UPON THE
 JURY INTERROGATORIES AND ANSWERS ATTACHED HERETO AND MADE A PART OF
 THIS VERDICT.
 So say we all this 24th day of April, 1983.
 BY: /s/ Harriet S. Liles 
 Foreman/Forewoman

*1248
 JURY INTERROGATORIES AND ANSWERS
 1. Was there fraud upon the part of any of the Defendant former Trustees
and/or Defendant Louis C. Ostrer which was a legal cause of damage to the
Plaintiff?
 YES X NO ___________
 2. If you answered "Yes" to the preceding question, which of the
Defendants do you find committed fraudulent acts?
 DEFENDANT FRAUD
 YES NO
 MICHAEL BURKE X _____
 MICHAEL FAMIGLIATTI X _____
 THOMAS KILGELLON X _____
 JOHN NORD _____ X 
 EUGENE BOWEN X _____
 MARTIN BESSELL X _____
 CHARLES BAKER X _____
 LOUIS C. OSTRER X _____
 3. If you answered "Yes" to the preceding question, what is the total
amount of legal damages, if any, the Plaintiff is entitled to recover as a
direct result of fraudulent acts?
 $ 246,677.00 
 4. If you answered "Yes" to the preceding question, state the legal
damages the Plaintiff is entitled to recover from each Defendant as a
result of that Defendant's fraudulent acts.
 DEFENDANT AMOUNT
 MICHAEL BURKE $ 35,238.00 
 MICHAEL FAMIGLIATTI $ 35,238.00 
 THOMAS KILGELLON $ 35,238.00 
 JOHN NORD $ 0 
 EUGENE BOWEN $ 35,238.00 
 MARTIN BESSELL $ 35,238.00 
 CHARLES BAKER $ 35,238.00 
 LOUIS C. OSTRER $ 35,239.00 
 5. Was there a breach of fiduciary duty on the part of the Defendant
former Trustees or any of said Defendant former Trustees?
 YES X NO ___________
 If you answered "No" to the foregoing, you need not answer the next three
(3) questions, questions numbered 6, 7 and 8.
 6. If you answered "Yes" to the preceding question, which of the Defendant
former Trustees do you find breached a fiduciary duty?
 DEFENDANT TRUSTEE BREACH OF FIDUCIARY DUTY
 YES NO
 MICHAEL BURKE X _____
 MICHAEL FAMIGLIATTI X _____
 THOMAS KILGELLON X _____
 JOHN NORD _____ X 
 EUGENE BOWEN X _____
 MARTIN BESSELL X _____
 CHARLES BAKER X _____

*1249
 7. If you answered "Yes" to the preceding question, what is the total
amount of legal damages, if any, the Plaintiff is entitled to recover as a
direct result of breach of fiduciary duty?
 $ 246,666.00 
 8. If the Defendants former Trustees or a Defendant former Trustee
breached a fiduciary duty, state the legal damages, if any, the Plaintiff
is entitled to recover as a direct result of each Defendant's breach?
 DEFENDANT TRUSTEE AMOUNT
 MICHAEL BURKE $ 41,111.00 
 MICHAEL FAMIGLIATTI $ 41,111.00 
 THOMAS KILGELLON $ 41,111.00 
 JOHN NORD $ 0 
 EUGENE BOWEN $ 41,111.00 
 MARTIN BESSELL $ 41,111.00 
 CHARLES BAKER $ 41,111.00 
 9. Was there negligence upon the part of the Defendants former Trustees
and/or Defendant Louis C. Ostrer or any of said Defendants which was a
legal cause of damage to the Plaintiff?
 YES X NO ___________
 10. If you answer "Yes" to the preceding question, which of the
Defendants do you find were negligent?
 DEFENDANT NEGLIGENT
 YES NO
 MICHAEL BURKE X _____
 MICHAEL FAMIGLIATTI X _____
 THOMAS KILGELLON X _____
 JOHN NORD _____ X 
 EUGENE BOWEN X _____
 MARTIN BESSELL X _____
 CHARLES BAKER X _____
 LOUIS C. OSTRER X _____
 11. If you answered "Yes" to any of the preceding questions, then what
is the total amount of the legal damages, if any, the Plaintiff is
entitled to recover as a direct result of negligence?
 $ 246,667.00 
 12. If you find that the Plaintiff is entitled to recover any legal
damages as a result of negligence, then state as to each Defendant, the
amount of legal damages, if any, resulting from that Defendant's negligence.
 DEFENDANT AMOUNT
 MICHAEL BURKE $ 35,238.00 
 MICHAEL FAMIGLIATTI $ 35,238.00 
 THOMAS KILGELLON $ 35,238.00 
 JOHN NORD $ 0 
 EUGENE BOWEN $ 35,238.00 
 MARTIN BESSELL $ 35,238.00 
 CHARLES BAKER $ 35,238.00 
 LOUIS C. OSTRER $ 35,239.00 

*1250
 13. Are the Defendant former Trustees and/or Defendant Louis C. Ostrer or
any of said Defendants liable for Punitive Damages?
 YES X NO ___________
 14. If you have answered the preceding questions "Yes", indicate as to
each Defendant so liable, the amount of punitive damages to be awarded.
 DEFENDANT AMOUNT
 MICHAEL BURKE $ 10,000.00 
 MICHAEL FAMIGLIATTI $ 10,000.00 
 THOMAS KILGELLON $ 10,000.00 
 JOHN NORD $ 0 
 EUGENE BOWEN $ 10,000.00 
 MARTIN BESSELL $ 10,000.00 
 CHARLES BAKER $ 10,000.00 
 LOUIS C. OSTRER $ 50,000.00 
 15. Did the Defendant former Trustees commit fraudulent or dishonest acts
after March 1, 1974, for which the Defendant, Insurance Company of North
America, is liable to the Plaintiff, Annuity Pay Plan.
 YES X NO ___________
 16. If you have found that any of the Defendant former Trustees committed
fraudulent or dishonest acts, for which the Defendant Insurance Company of
North America, is liable to the Plaintiff, Annuity Pay Plan, give as to
each such Defendant former Trustee the date the fraudulent act or acts
first occurred.
 DEFENDANT TRUSTEE DATE
 MICHAEL BURKE Mar. 1, 1974 12:01 PM
 MICHAEL FAMIGLIATTI Mar. 1, 1974 12:01 PM
 THOMAS KILGELLON Mar. 1, 1974 12:01 PM
 JOHN NORD ______________________
 EUGENE BOWEN Mar. 1, 1974 12:01 PM
 MARTIN BESSELL Mar. 1, 1974 12:01 PM
 CHARLES BAKER Mar. 1, 1974 12:01 PM
 17. If you have found that any of the Defendant former Trustees committed
fraudulent or dishonest acts, for which Defendant, Insurance Company of
North America, is liable to the Plaintiff, Annuity Pay Plan, as to each
such Defendant former Trustee, give the date upon which the Plaintiff,
Annuity Pay Plan, first learned of the dishonest or fraudulent acts.
 DEFENDANT TRUSTEE DATE
 MICHAEL BURKE Jan. 1975 
 MICHAEL FAMIGLIATTI Jan. 1975 
 THOMAS KILGELLON Jan. 1975 
 JOHN NORD _____________
 EUGENE BOWEN Jan. 1975 
 MARTIN BESSELL Jan. 1975 
 CHARLES BAKER Jan. 1975 
 18. If you have found that any of the Defendant former Trustees committed
fraudulent or dishonest acts after March 1, 1974, for which Defendant,
Insurance Company of North America, is liable to the Plaintiff, Annuity Pay
Plan, state the total amount of legal damages, if any, the Plaintiff's
[sic] are entitled to recover as a result of such fraudulent or dishonest
acts.
 $ 345,000.00 

*1251
 19. If you have found that any of the Defendant former Trustees committed
fraudulent or dishonest acts after March 1, 1974, for which the Defendant,
Insurance Company of North America, is liable to the Plaintiff, Annuity Pay
Plan, give as to each such Defendant former Trustee the amount of legal
damages, if any, legally caused by such dishonest or fraudulent acts.
 DEFENDANT TRUSTEE AMOUNT
 MICHAEL BURKE $ 57,500.00 
 MICHAEL FAMIGLIATTI $ 57,500.00 
 THOMAS KILGELLON $ 57,500.00 
 EUGENE BOWEN $ 57,500.00 
 MARTIN BESSELL $ 57,500.00 
 CHARLES BAKER $ 57,500.00 
 DATED: April 24, 1983 /s/ Harriet S. Liles 
 As Foreman/Forewoman

NOTES
[1] The jury absolved John Nord, a trustee for only eight weeks, of all liability. The court granted a summary judgment as to defendant Robert Charles Sells, lead underwriter for Underwriters at Lloyd's, which was affirmed on appeal. Phillips v. Ostrer, 418 So.2d 1104 (Fla. 3d DCA 1982), review denied, 429 So.2d 6 (Fla. 1983).
[2] Section 11 of INA's Blanket Honesty Bond states, in pertinent part:

This bond shall be deemed canceled as to any Employee: (a) immediately upon discovery by the Insured, or by any partner or officer thereof not in collusion with such Employee, of any fraudulent or dishonest act on the part of such Employee... .
This section did not become operative because former trustee John Nord resigned before the effective date of INA's bond.
[3] Ostrer was convicted on separate occasions of grand larceny and stock manipulation. His license was revoked in December, 1967, for untrustworthiness.
[4] The trial court did not alter the punitive damage award of $110,000.
[5] A discrepancy in the amount appears on the face of the final judgment and the error should be corrected on remand.
[6] See appendix.
[7] Although we find several inconsistencies and inherent defects in the interrogatories, appellants' failure to raise these inconsistencies prior to the discharge of the jury constitutes a waiver of their right to challenge the interrogatories on appeal. Higbee v. Dorigo, 66 So.2d 684 (Fla. 1953); N. American Catamaran Racing Assoc. v. McCollister, 480 So.2d 669 (Fla. 5th DCA 1985); Ashby Div. of Consol. Aluminum Corp. v. Dobkin, 458 So.2d 335 (Fla. 3d DCA 1984); Savoca v. Sherry Frontenac Hotel Operating Co., 346 So.2d 1207 (Fla. 3d DCA 1977).