Pursuant to the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"), the plaintiffs, Samuel L. Bean III, his wife Leigh Ann Bean, and their minor son Luke Bean, filed this wrongful death and products liability action against BIC Corporation ("BIC") and other defendants following a fire that destroyed the Beans' home on February 26, 1988. The fire, which resulted from the Bean children's playing with a butane cigarette lighter manufactured by BIC, injured five-year-old Luke Bean and killed four-year-old Kristi Bean.
Before commencing this action, the Beans began a collateral action against their mortgagees and State Farm Fire and Casualty Company, seeking damages for failure to provide or procure homeowner's insurance on their home. Bean v. State FarmFire Cas. Co., 591 So.2d 17, 19 (Ala. 1991). Eventually, a jury returned a verdict in that case in favor of the Beans against one of the mortgagees for $80,000. Id. at 20.
In the meantime — on April 25, 1989 — this AEMLD action was begun against BIC and others. The trial court granted BIC's motion for a partial summary judgment on the Beans' claims that BIC's lighter design was defective and that the BIC lighter failed to carry an appropriate warning.[1] On appeal, this Court held that the entry of the partial judgment was "premature." Specifically, as to the issue of alleged design defect, the Court stated:
 "Proper and complete discovery would provide the trial court a greater opportunity to further assess this case toward the question of what duty, if any, BIC has to offer the public a child-resistant lighter. Adequate discovery could also provide answers to questions relating to the product's safety when measured against the foreseeability of a danger presented by its use as well as to the feasibility of an alternative design that could avert any danger."
Bean v. BIC Corp., 597 So.2d 1350, 1352-53 (Ala. 1992).
As to the claims that BIC had provided inadequate warnings regarding the use of the lighter, the Court held:
 "We hold that BIC failed to show an absence of a genuine issue of material fact, because the affidavit [of BIC's expert] in support of the motion for summary judgment does not address the reasons the Beans argue that the warning was inadequate. The Beans do not contend that there was no warning, but rather that the warnings given did not adequately apprise them that small children would be attracted to the lighter and that it could be easily operated by small children. Because BIC has failed to show the absence of a genuine issue of material fact, as to the allegation of a failure to warn, the summary judgment is due to be reversed."
597 So.2d at 1353-54.
During the trial following the remand from this Court, the parties agreed to allow the trial court to determine the issue of the Beans' alleged property damage and the amount of the award therefor, if any. The issue of BIC's liability under the AEMLD was to be determined by the jury.
During its deliberations, the jury asked the court whether it could find in favor of the minor children but against the parents. The judge answered this inquiry in the affirmative, and the jury returned the following verdicts:
 "We, the jury, find the issues in favor of the defendant, BIC Corporation, and against the plaintiff, Sam L. Bean III.
 "We, the jury, find the issues in favor of the defendant, BIC Corporation, and against the plaintiff, Leigh Ann Bean.
 "We, the jury, find in favor of the plaintiff, Sam L. Bean III, as next friend of Luke Bean, a minor, and against the defendant, BIC Corporation, and assess plaintiff's damages at One Hundred Fifty Thousand Dollars ($150,000).
 "We, the jury, find in favor of the plaintiffs, Sam L. Bean III and Leigh Ann *Page 843 
Bean, as parents and personal representatives of the estate of Kristi Bean, and against the defendant, BIC Corporation, and assess plaintiffs' damages at One Hundred Thousand Dollars ($100,000)."
BIC moved for a mistrial on the ground that the verdicts were inconsistent. The trial court denied BIC's motion and entered its judgment on the jury's verdicts on September 30, 1993.
On October 5, 1993, the Beans moved the trial court to enter a judgment on their claim for property damage. They sought "an award of $71,843.29," which, they alleged, represented the value "of jointly held real and personal property damaged or destroyed in the fire." On January 14, 1994, the trial court entered a judgment for the Beans in the amount of $70,000. The court, however, citing the Beans' collateral action in which they had already received $80,000, see Bean v. State Farm Fire Cas. Co., 591 So.2d 17 (Ala. 1991), concluded that the $80,000 was due to "be credited against the amount of the [Beans'] recovery against . . . BIC . . . for damage to the [Beans'] real and personal property." Consequently, it held that the $70,000 judgment entered against BIC was "extinguished
by a set-off through the entry and collection of the judgment" recovered in the earlier case. (Emphasis added.)
BIC appeals from those portions of the judgment that are based on the jury verdicts in favor of the injured minor plaintiff, Luke Bean, and in favor of the Beans, as parents of their deceased minor daughter, Kristi Bean. The Beans cross-appeal from that portion of the judgment that effectively awarded them no damages on their property damage claim.
 Case No. 1930751 — BIC's Appeal
BIC argues that the verdicts are inconsistent. More specifically, it contends:
 "The jury's findings against Sam and Leigh Ann Bean but in favor of Luke and Kristi Bean are inherently inconsistent and contradictory. Only one liability issue was presented at trial: whether BIC was liable for having manufactured a lighter that was defective and unreasonably dangerous under the AEMLD. By finding that BIC was liable to the children but was not liable to the parents, the jury found that the same lighter was both defective and not defective. These legally irreconcilable findings require a new trial."
Reply Brief of Appellant/Cross-Appellee BIC Corporation, at 29 (emphasis in original).
Were it not for the events that transpired during the jury's deliberations, we would be compelled to agree with BIC. We derive the most accurate and complete account of those events from a post-trial affidavit given by the trial judge and submitted for the record by BIC. The judge's affidavit states in pertinent part:
 "2. I was the trial judge for the trial of Samuel L. Bean, III, et al. v. BIC Corporation
(Civ. Action No. CV 89-3282), which was tried in the Circuit Court for Jefferson County, Alabama, beginning on September 13, 1993. The trial concluded with a jury verdict on September 30, 1993.
 "3. On September 30, 1993, my law clerk . . . informed me that the jury had asked a question concerning whether the jury could award money to the children, Luke and Kristi Bean, but not to the parents, Sam and Leigh Ann Bean. At the time [she] informed me of the jury's question, there were no attorneys for any party present. I instructed [her] to tell the jury 'yes.'
 "4. After sending [the law clerk] back to the jury room to answer affirmatively the question posed by the jury, I called the attorneys for the Beans and BIC . . . into my chambers to advise them of what had transpired. There was no opportunity for the attorneys for either party to object to the Court's response to the jury's question before the response was delivered to the jury."
(Emphasis added.)
Obviously, the inconsistency of which BIC complains arises out of the trial court's affirmative answer to the jury's question. It is undisputed, however, that neither the Beans nor BIC objected to the trial court's answer to the jury before it was given, or, as the trial judge's affidavit suggest, beforethe jury emerged from the jury room with its *Page 844 
verdict. Criticizing, the procedure that was followed, BIC states:
 "The Beans . . . argue that BIC waived its right to attack the consistency of the jury's verdict by failing to object to the 'charge' given by the trial court shortly before the verdict was returned. . . . As the Record on Appeal reflects, none of the attorneys were present when the trial court gave its affirmative response to the jury's question whether it could find in favor of the children but not in favor of the parents. As a result, none of the attorneys had an opportunity to object to the court's 'charge' before it was given."
Reply Brief of Appellant/Cross-Appellee BIC Corporation, at 32 (emphasis added) (citations and footnote omitted).
Ala.R.Civ.P. 51, however, does not require an opportunity to object before a charge is given. It merely requires that a party be permitted an "[o]pportunity . . . to make the objection out of the hearing of the jury." (Emphasis added.) InKirkland Co. of Anniston, P.C. v. A M Food Serv., Inc.,579 So.2d 1278 (Ala. 1991), we explained this aspect of Rule 51, as follows:
 "In McLendon Pools, Inc. v. Bush, 414 So.2d 92
(Ala.Civ.App. 1982), the Court of Civil Appeals stated:
 " 'As we read Rule 51, A.R.C.P., the onus for objection is upon counsel. The rule does not require the court to initiate the opportunity to object, only that opportunity be given to make the objection out of the hearing of the jury. We conclude that if counsel fails to request the opportunity to object, the court will not be in error for not affirmatively offering it.'
 "414 So.2d at 95. In that case, it appeared that the oral charge was completed and that the jury was directed to retire. The trial court did not follow the usual procedure of asking counsel if they objected to the charge; however, the Court of Civil Appeals stated that the record did not reflect that counsel stated an objection or requested an opportunity to do so. The court held that the trial court did not err.
 "We find the analysis in McLendon instructive. In this case, the trial court asked counsel for Kirkland for a reaction to the oral charge, and counsel replied, 'Satisfied, Your Honor.' Counsel for Kirkland did not, at that juncture, object to the charge or request an opportunity to do so outside the presence of the jury. Because Kirkland's counsel failed to request an opportunity to object, the trial court will not be held in error for failing to offer the opportunity."
579 So.2d at 1285.
Crucial to the disposition of this issue would have been evidence that BIC objected to the charge at its earliestopportunity, which, as the affidavit reveals, was after the judge had apprised counsel of his response to the jury, andbefore the jury emerged from its deliberations. This evidence, however, has not been presented. Indeed, the tenor of the jury's question should have alerted all parties to the potential for prejudice in the court's instruction. A party may not — as was apparently done in this case — await the jury's verdict before challenging an instruction that invites an inconsistency.
"Unchallenged jury instructions become the law of the case.Louisville Nashville R.R. v. Atkins, 435 So.2d 1275 (Ala. 1983)." Clark v. Black, 630 So.2d 1012, 1017 (Ala. 1993). "The jury is bound to follow such instructions, even if they are erroneous. Lee v. Gidley, 252 Ala. 156, 40 So.2d 80 (1949) (erroneous instructions became the law of the case, and a judgment entered on the jury's verdict comporting with those instructions would not be reversed on appeal)."630 So.2d at 1017.
Because no party objected in a timely manner, the court's instruction, and the verdict rendered in accordance therewith, became the law of this case. For these reasons, BIC's inconsistency-of-the-verdict argument will not serve as grounds for reversal of the judgment entered on the jury verdict. BIC's other claims of error are also without merit.
 Case Number 1930853 — The Beans' Cross Appeal
The Beans contend that the trial court erred in first finding BIC liable for the *Page 845 
Beans' property damage and awarding them $70,000, and then off-setting against that award the amount of the Beans' judgment in the fraud action against their mortgagee. BIC argues that the trial court erred in entering a judgment on the property — damage claim, because, it contends, to do so violated the parties' pre-verdict agreement regarding the disposition of that claim.
The agreement was evidenced by the following colloquy:
 "[Counsel for the Beans]. In keeping with our conversation before the noon break, and under the impressions imposed by the court regarding allowing interrogation about the lawsuit against the mortgage companies, we agree that the court determine the entirety of the Beans' claims for personal and real property damage, that is, personal and real property damage as opposed to any other kind of physical and mental injury or the wrongful death claim or claim in behalf of Luke. And, of course, you would be guided by . . . the jury's verdict on liability if that ever became a question on what you are doing.
 "[Counsel for BIC]. The only thing I am concerned about is the court's coercion. I want to make it clear it is your choice, no —
 "[Counsel for the Beans]. When I make a deal, I make a deal.
 "[Counsel for BIC]. Good enough. That is all I want to know.
". . . .
"[The court]. Okay.
 "[Counsel for the Beans]. So, I guess we can expect not to hear anything about the —
"[The court]. I guess that is a fair statement.
"[Counsel for the Beans]. All right.
 "[The court]. Okay. With that behind us, are we ready to move forward?
"[Counsel for the Beans]. Yes, Your Honor."
(Emphasis added.)
All parties concede that the agreement expressly required the court, in disposing of the Beans' property-damage claims, to enter a judgment consistent with the jury's verdict on the wrongful death and personal injury claims. The Beans, however, contend that the entry of judgment in their favor was not inconsistent with the jury's verdict, because, they argue, the jury's verdict was based on a finding that neither Mr. Bean nor Mrs. Bean had suffered any injuries. They insist that the verdict was not based on a finding that BIC was not liable to Mr. and Mrs. Bean. BIC, of course, draws the opposite conclusion from the jury's verdict. We agree with BIC's construction of the verdict.
Verdicts are to be construed so as to effectuate the true intent of the jury. See Cory v. Greyhound Lines, Inc.,257 So.2d 36, 41 (Fla. 1971). The jury's intent may be derived from a construction of its verdict in the context of the case as a whole, including its procedural posture, the issues, evidence, pleadings, arguments, and jury instructions. See Reynolds Bros.Lumber Co. v. W.S. Newell Constr. Co., 284 Ala. 352, 356-57,224 So.2d 899, 902 (1969); Jim Walter Homes, Inc. v. Holman,373 So.2d 869, 871 (Ala.Civ.App. 1979).
Both Sam and Leigh Ann Bean claimed compensatory damages for physical injuries they incurred while escaping, and attempting to rescue their two children from, the fire that erupted in the family home. They also sought compensatory damages for mental anguish incurred in connection with their escape and as a result of the loss of their youngest child. Sam Bean was hospitalized immediately after the fire; Dr. Stuart Padove, a physician specializing in "pulmonary disease," gave extensive, particularized testimony as to some physical injuries Mr. Bean had incurred in the fire. Also, Leigh Ann Bean's mother testified that Mrs. Bean's doctor prescribed tranquilizers for her "the day of the fire," and had continued to prescribe them until the time of the trial. Indeed, whether Sam and Leigh Ann Bean actually sustained physical or emotional injuries was an issue that was never seriously contested.
One issue that did play a prominent role in the trial, however, regarded the Beans' supervision of their children. That issue was relevant to at least two elements of the plaintiffs' *Page 846 prima facie case, namely, foreseeability and proximate cause. As to foreseeability, the court charged the jury:
 "The fifth element that the plaintiff[s] must prove to your reasonable satisfaction is that the lighter was being used in an intended or reasonably foreseeable manner at the time of the fire. The plaintiffs claim that it was reasonably foreseeable, at the time BIC marketed the lighter in question, that children too young to appreciate the dangers of operating the lighter, could obtain and operate the lighter.
 ". . . Whether it was reasonably foreseeable that children too young to appreciate the dangers of operating BIC lighters, could obtain and operate such lighters is a fact issue for you to decide based on all the evidence presented."
Also, forcefully presented in closing argument was BIC's contention that the Beans had failed to supervise their children and that their failure in that regard was the soleproximate cause of the fire. See Reply Brief ofAppellant/Cross-Appellee BIC Corporation, at 21.
Nothing in the manner in which this case was tried suggests that a damages question lay at the heart of the jury's query to the trial court. Indeed, to propose that two of four plaintiffs in a personal injury action could not recover — regardless of the extent of their own injuries — unless the other two plaintiffs could also prove some injuries, defies commonexperience and reasoning. Far more plausible is a construction of the verdict as evidence of the jury's reluctance, because of a finding of a lack of parental supervision, either to (1) hold BIC liable for the parents' injuries or (2) penalize the small children for what it considered the fault of the parents.
Moreover, the verdicts themselves expressly declared a finding of the "issues in favor of the defendant, BIC Corporation, and against the [adult plaintiffs]." (Emphasis added.) The jury had at its disposal verdict forms evidencing a finding in favor of the adult plaintiffs and assessing discretionary damages. Had the jury merely intended to express a finding that the parents had shown no injury, it would have used those verdict forms and would have awarded zero or nominal damages.
Construing the verdict in the context of the peculiarities of this case, we must conclude that the jury desired to express its view that these plaintiffs, as adult parents, should bear personal responsibility for what the jurors must have seen as the parents' lack of proper parental supervision of their children. The trial court's affirmative response to the jury's query, which response resulted in this legal inconsistency, became, through all parties' acquiescence, the law of the case.[2]
Because of the agreement of the parties, the only judgment the trial court could have entered on the parents' property-damage claims that would have been consistent with thejury's verdict would have been a judgment for BIC. The judgment for the Beans on their property damage claim was clearly erroneous; the court should have entered a judgment for BIC on that claim. The judgment on that claim is reversed and a judgment is hereby rendered for BIC on that claim.
1930751 — AFFIRMED.
SHORES, KENNEDY, and INGRAM, JJ., concur.
MADDOX and HOUSTON, JJ., concur in the result.
1930853 — REVERSED AND JUDGMENT RENDERED.
MADDOX, SHORES, HOUSTON, KENNEDY, and INGRAM, JJ., concur.
[1] For the purposes of the earlier appeal in this case, "BIC had stipulated, for purposes of determining whether a duty to child-proof [the lighter] existed, that 'it is feasible to design a more child-resistant lighter and also foreseeable that a child may come in contact with the lighter.' " Bean v. BICCorp., 597 So.2d 1350, 1351 (Ala. 1992).
[2] We understand, of course, that the wrongful death claim is statutorily vested in the parents without the necessity of an administration of the deceased minor's estate. We note this status of the parents simply to observe that no contention is made that that status, of itself, creates an inconsistency in the verdicts. Ala. Code 1975, § 6-5-391.