689 So.2d 1099 (1997)
Jacques PIERARD, Appellant/Cross-Appellee,
v.
AEROSPATIALE HELICOPTER CORP., etc., et al., Appellees/Cross-Appellants.
Nos. 94-2296, 94-2374.
District Court of Appeal of Florida, Third District.
February 5, 1997.
Rehearing Denied April 9, 1997.
*1100 William Huggett, Miami; Cooper & Wolfe, P.A., and Sharon L. Wolfe, Miami; Haggard & Parks, P.A., and Robert L. Parks, Coral Gables, for appellant/cross-appellee.
Kroll & Tract, P.A., and William C. Brown, New York City; Thornton, Davis & Murray, P.A., and Kathleen M. O'Connor, Miami, for appellees/cross-appellants.
Before JORGENSON and SHEVIN, JJ., and BARKDULL, Senior Judge.
JORGENSON, Judge.
Jacques Pierard appeals from an order granting a new trial on the issue of damages; Aerospatiale Helicopter Corp. (AHC) cross appeals an order denying its motion for a directed verdict on liability. For the reasons that follow, on Pierard's appeal we reverse and remand with directions to reinstate the jury verdict; we affirm on the cross appeal.
Pierard, a French citizen, was a helicopter pilot, sailing instructor, boat captain, and former swimming champion. He came to the United States to earn his instrument rating. At the time of the accident he was thirty-seven years old and engaged to be married. On January 31, 1991, Pierard was piloting a helicopter manufactured by AHC when, soon after takeoff from Watson Island, the aircraft began to lose power. Pierard tried to return to Watson Island, but was forced to make a crash landing in the shallow water just off the MacArthur Causeway. The crash landing fractured Pierard's lowermost vertebra; fragments of the shattered vertebra were forced up into his spinal canal. Two surgeries reduced the spinal canal obstruction and stabilized the spinal column with metal rods. The surgeries, coupled with extensive physical therapy, enabled Pierard to walk, albeit with great difficulty. However, he lost all bladder and bowel control, and all sexual function. He faces accelerated degenerative changes in the spinal column and eventually will not be able to walk unaided. He suffers from constant pain and muscle spasms, depression, and posttraumatic stress disorder. He lives with his mother, as his fiancee was not able to face his injuries and broke the engagement. His ability ever to work again is doubtful.
An investigation by the National Transportation Safety Board determined that the fuel filter in the helicopter had been installed upside down. It was undisputed that the fuel filter was upside down when the accident happened; the improper positioning restricted fuel flow and starved the engine of fuel. AHC's employees testified that the company had known since 1971 that the fuel filter could inadvertently be installed upside down, but had not warned owners or mechanics of the problem.
Pierard sued AHC for negligence. Following a two-week trial and three days of jury deliberation, the jury returned a verdict finding AHC negligent, and awarded Pierard $125,000.00 in past medical expenses; $933,000.00 in future medical expenses; $135,000.00 in lost past earnings; $600,000.00 in lost future earnings; and $6.7 million in pain and suffering. The damages awarded were less than plaintiff had requested in closing argument and less than his evidence had presented.
The trial court denied AHC's motion for a judgment notwithstanding the verdictit had denied AHC's prior motion for a directed verdict. The court also denied AHC's motion for a remittitur and a new trial on all issues. However, the trial court ordered a new trial on the issue of damages only, finding that the verdict of $6.7 million for pain and suffering was excessive for "a non-functioning bladder."
The trial court also found that Pierard's counsel had violated a court order to "show blow ups (sic) or demonstrative evidence to opposing counsel before being presented to the jury." The evidence in question was a chart prepared by defendant AHC's own vocational rehabilitation expert, which listed medical expenses, and had a column reducing those expenses to present value. On plaintiff's cross-examination of the witness, plaintiff's counsel displayed the chart with the column of present value numbers covered. The witness was not an economist, and was not qualified to testify as to present value. The trial court had given a curative instruction, and had told the jurors to disregard the chart altogether. On appeal, neither of the *1101 parties nor this court was able to locate any such order on exhibits issued by the trial court.
We reverse the order granting a new trial on damages; neither reason supplied by the trial court supports the order. The order as to plaintiff's alleged alteration of a witness exhibit in violation of a court order is simply not supported by the record; there is no such order. Moreover, even if there were, any error in displaying the chart was harmless. See Newberry Square v. Southern Landmark, Inc., 578 So.2d 750, 753 (Fla. 1st DCA 1991) (brief display of altered chart to jury had not "imperiled the fairness of the proceeding by prejudicing the minds of the jurors, as has been required for reversal"). Accordingly, the trial court erred when it ordered a new trial on damages on this basis.
In finding the jury verdict excessive, the trial court erred as a matter of law. "Although a jury may award a greater sum than the trial court deems appropriate, the court may not interfere unless the sum is so large that it indicates the jury must have been under the influence of passion, prejudice, or gross mistake." Phillips v. Ostrer, 481 So.2d 1241, 1246 (Fla. 3d DCA 1985) (citing Lassiter v. Int'l Union of Operating Eng'rs, 349 So.2d 622 (Fla.1976)), rev. denied, 492 So.2d 1334 (Fla.1986). "If evidence supports an award of damages, the award may not be disturbed." Phillips, 481 So.2d at 1246.
The record in this case amply supports both the awards for economic damages and the award for pain and suffering. In mischaracterizing plaintiff's injuries as limited to "a nonfunctioning bladder," the trial court overlooked a sea of evidence on the extent and severity of Pierard's physical and psychological injuries; ignored the poignant testimony on the effect those injuries have on his daily routines and on the quality of his life; and discounted expert testimony on the degenerative nature of his condition.
The damages, therefore, must be so excessive as to strike mankind, at first blush, as being, beyond all measure, unreasonable and outrageous, and such as manifestly show the jury to have been actuated by passion, partiality, prejudice, or corruption. In short, the damages must be flagrantly outrageous and extravagant, or the court cannot undertake to draw the line; for they have no standard by which to ascertain the excess.
Coleman v. Southwick, 9 Johns. 45, 6 Am. Dec. 253 (1812)(quoted with approval in Lassiter, 349 So.2d at 626).
The award of non-economic damages admittedly is a large sum of money, but is in accord with the evidence adduced. The jury deliberated for three days before arriving at this verdict; its conclusion was not outrageous or extravagant.
In sum, the damages the jury awarded were proper. The jury's verdict is reinstated, and on remand we direct the trial court to enter judgment on the verdict.
We find no merit in AHC's cross appeal. The trial court properly denied AHC's motion for a directed verdict and motion for judgment notwithstanding the verdict. All of the evidence at trial admitted without objection, viewed in the light most favorable to Pierard, shows that the inverted installation of the fuel filter caused the engine to lose power and caused the helicopter to crash.
Affirmed in part; reversed in part; remanded with directions.