Judith Craig, individually and as mother and next friend of Gary Dean, a minor, appeals the summary judgment entered in favor of the defendant City of Mobile. Craig had sued, alleging negligence and/or wantonness on the part of several defendants in relation to the personal injury suffered by her son during a swimming trip to Montlimar Canal, a drainage canal constructed and maintained by the City.
On July 11, 1992, Dean, who was then age 15, was invited by a friend, Keith Bostick, to go swimming at a "creek." Dean and his girlfriend accepted the invitation, and Bostick drove them to a part of Montlimar Canal near the intersection of Halls Mill Road and Azalea Road in Mobile. Another group of persons dressed in swimming clothes was leaving the area as Dean and his friends arrived. After swimming for approximately 30 minutes, Dean slipped while walking on the bank of the canal and fell into the water. He was severely injured when he became impaled on a steel rod that was imbedded in a block of concrete submerged beneath the water. Dean's injury required extensive medical and surgical care.
On March 29, 1993, Craig sued the City of Mobile and several fictitiously named defendants. She alleged that the defendants were negligent and/or wanton in creating a dangerous condition at Montlimar Canal in relation to the demolition of an old bridge and the construction and maintenance of the canal and a new bridge, in failing to abate the danger created, and in failing to warn the *Page 440 
public of the danger. She amended the complaint to add "Laidlaw Contracting Company, Inc.," as a defendant and again amended to add J.W. Laidlaw, individually, and "Laidlaw Contracting Company" as defendants. A firm with the Laidlaw name had contracted with the City in 1959 to complete the "Wragg Swamp Canal" project, which included construction of what is presently termed the Montlimar Canal, the construction of several new bridges, the removal of an old bridge, and the disposal of the debris from the old bridge.
On July 7, 1994, the circuit court entered a summary judgment in favor of all defendants. Craig appealed to this Court on August 12, 1994; on December 22, 1994, the appeal was dismissed as to the Laidlaw defendants, leaving the City as the sole appellee in this case.
 I.
In order to enter a summary judgment, the trial court must determine that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. Rule 56, A.R.Civ.P.; Bussey v. John Deere Co.,531 So.2d 860 (Ala. 1988). This case was filed after June 11, 1987; accordingly, the "substantial evidence rule" applies to the ruling on the motion for summary judgment. Ala. Code 1975, §12-21-12; Bass v. SouthTrust Bank of Baldwin County,538 So.2d 794 (Ala. 1989). Thus, in order to defeat a properly supported motion for summary judgment, the nonmovant must present in support of his position substantial evidence creating a genuine issue of material fact. Betts v. McDonald's Corp.,567 So.2d 1252 (Ala. 1990). "[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co.of Florida, 547 So.2d 870, 871 (Ala. 1989). In reviewing a summary judgment, this Court is bound to review the evidence in a light most favorable to the nonmovant, which in this case is Craig. Thetford v. City of Clanton, 605 So.2d 835 (Ala. 1992).
 II.
On appeal, Craig argues that she presented substantial evidence indicating that the City was negligent and/or wanton in first creating the dangerous condition that caused Dean's injury, i.e., in placing concrete rip-rap containing exposed steel rods along the banks of the Montlimar Canal during its construction and maintenance, and then was negligent and/or wanton in failing to make the area safe once the dangerous condition was created. The City agrees that Dean's injury was caused by his being impaled on a metal rod. It is also undisputed that certain portions of the bank of Montlimar Canal in the general area where Dean was injured are lined with broken concrete "rip-rap," which was used to prevent erosion or to help repair its adverse effects. What is disputed is whether the concrete placed at the drainage canal by either the Laidlaw company or the City actually contained exposed steel reinforcement rods, or "rebar," and, if it did, whether the City had a duty to make the area safe for the public.
The Laidlaw company used broken concrete as rip-rap in the construction of the drainage canal in 1959. The City's construction specifications for the "Wragg Swamp Canal" project called for the placement of rip-rap in certain areas. The rip-rap was to consist of field stone or quarry stone, but could also be composed of broken concrete if the material was approved in advance by the project engineer. Craig argues that broken concrete with exposed rebar was used as rip-rap, and that the material created a dangerous condition in Montlimar Canal.
Craig contends that when the City voluntarily performed maintenance on Montlimar Canal in 1988, it undertook a duty to use reasonable care in its maintenance activities, and that that duty included the duty to abate dangerous conditions. Craig claims that the City breached that duty by using broken concrete with rebar as rip-rap when it repaired an area of the canal bank and also by failing to take the actions necessary to alleviate the danger that exposed rebar could cause to the swimmers and fishermen who commonly visited the area. *Page 441 
Craig argues that Otto Collins, the person designated by the City to be deposed, see Rule 30(b)(6), A.R.Civ.P., testified at his deposition that shortly before his deposition he had observed a piece of broken concrete with exposed rebar, in the area where Dean was injured. Craig notes that Collins also admitted that one of his responsibilities in maintaining Montlimar Canal was to eliminate that kind of hazard. However, the City contends that in his deposition Collins stated only that during a visit to the canal more than a year after Dean's injury, he had seen a piece of rebar in the water in the area where the City's maintenance work had been performed, and did not say that he had seen it in the area where Dean had been injured. In either case, Collins's statement indicates, at the least, that he had seen the rebar in the water in an area near the place where Dean was injured.
The City argues that Craig presented no evidence that any of the concrete rip-rap it had placed in Montlimar Canal contained rebar. It denies that the concrete rip-rap used by the Laidlaw company in 1959 contained rebar. It concedes that in 1988 it performed maintenance on the canal and that that maintenance included placing concrete rip-rap on part of the canal bank to repair erosion, but it argues that the broken concrete it used did not contain rebar. Moreover, the City states that it placed rip-rap only on the southeast side of the canal and not on the southwest side where, it contends, Dean sustained his injury.
Finally, the City contends that it has never had a duty to seek out and correct any defective or dangerous conditions in Montlimar Canal and that, before Dean's injury, it had no knowledge of exposed rebar in the canal and no knowledge that the canal was used by swimmers and fishermen. Thus, the City argues that it did not have notice of a defect, as required by Ala. Code 1975, § 11-47-190, the statute governing a municipality's liability, in order for it to be held liable for Dean's injury.
 III.
Although the City argues that before Dean's injury it had no knowledge of exposed rebar in Montlimar Canal and no knowledge that the canal was being used by the public for recreation and, thus, that it had no duty to maintain the canal in a reasonably safe condition, we note the following statement in City ofMobile v. Jackson, 474 So.2d 644, 649 (Ala. 1985), regarding a municipality's duty in relation to construction and maintenance of drainage systems:
 "In Kennedy v. City of Montgomery, 423 So.2d 187
(Ala. 1982), this Court held that pursuant to Code 1975, § 11-50-50, municipalities are authorized to construct and maintain drainage systems, and, while a municipality is not required to exercise this authority, once it does so, a duty of care arises and a municipality may be liable for damages caused by its negligence.
 "We find that the liability for negligent design or maintenance of drainage systems is analogous to that involved in the construction and maintenance of streets, alleys, or public ways or buildings, and, thus, that the city is not immune in this case."
Thus, we conclude that the City had a duty to act with reasonable care in the construction and maintenance of the Montlimar Canal.
Moreover, under § 11-47-190, a municipality may be liable for an injury suffered by a person where the injury-causing defect "had existed for such unreasonable length of time as to raise a presumption of knowledge of such defect." Viewing the evidence in a light most favorable to Craig, we conclude that the defect created by concrete rip-rap with exposed rebar had existed in Montlimar Canal for at least 4 years and possibly for as long as 33 years before Dean was injured; this fact raises a presumption of notice to the City. Accordingly, if the City breached its duty to use reasonable care in the construction and maintenance of Montlimar Canal, it may be liable for injuries proximately caused by that breach.
Although the City denies that either it or the Laidlaw company placed broken concrete with exposed rebar in Montlimar Creek, it has conceded in its brief that Dean's injury was caused by his falling onto and being impaled by a piece of steel reinforcement *Page 442 
rod imbedded in concrete rip-rap.[1] It is undisputed that both an agent of the City — the Laidlaw company — and the City itself placed broken concrete in Montlimar Canal as rip-rap. The City has also admitted, through testimony of its Rule 30(b)(6) witness, that a year after Dean's injury exposed rebar was present in Montlimar Canal in an area near where Dean had been injured.
In addition, Craig presented the affidavit of her ex-husband, in which he stated that a few weeks after Dean's injury he observed a metal rod attached to a piece of concrete submerged beneath the water at the very site where Dean had been injured. She presented other affidavits stating that the Montlimar Canal had long been used by the general public for swimming and fishing. Viewing the totality of this evidence in a light most favorable to Craig, the nonmovant, we hold that she presented in support of her claim substantial evidence creating genuine issues of material fact. Thus, the City's summary judgment must be reversed.
REVERSED AND REMANDED.
ALMON, SHORES, HOUSTON and COOK, JJ., concur.
[1] In its brief, the City states in the opening paragraph of its statement of facts:
 "On or about July 11, 1992, Gary Dean was injured when he slipped and fell into Montlimar Creek, impaling himself upon an unidentified steel reinforcement rod attached to a piece of concrete 'rip-rap,' both of which were completely submerged below the waters of Montlimar Creek, near the intersection of Halls Mill Road and Azalea Road in Mobile, Mobile County, Alabama."
(Emphasis added.)