COOK, Justice.
The City of Birmingham appeals from a judgment entered pursuant to a jury verdict in favor of Janet Lavert Waits-. We affirm.
On May 16,1991, Waits, a City of Birmingham correctional officer, was assigned to guard inmates in cellblock J-2 of the Birmingham city jail. Waits accompanied the officer whose shift was ending into cellblock J-2, to see how much cleaning the inmates would, need to do on Waits’s shift. The officers smelled “julep,” an alcoholic beverage made by the inmates, and found it in a mop bucket in the cellblock. The officers also concluded that the noise on the cellblock .and the behavior of the inmates indicated that some of the inmates were intoxicated.
All of the inmates were ordered into their cells, and the cellblock was “locked down.” *1128 The officer going off duty took the container of julep to the booking area of the jail. Waits radioed the supervisor in the booking area, stating that the other officer was bringing the confiscated “julep” to the office, , and the supervisor told Waits to send some of the-inmates suspected of being intoxicated to the booking area also. These inmates were later sent back to the cellblock — unaccompanied by any jail employee.
At this same time, Waits ordered the inmates of cellblock J-2 to begin their cleaning duties for the night. Later, Waits determined they were not working and told them to finish the cleaning or to go to their individual cells. The inmates appeared to be returning to their cells when inmate Derrick Davis struck inmate Wayne Smith; a fight among the inmates then began.
Waits testified that she twice radioed for help when the fight began, but did not receive a responsive communication on her radio. After she had radioed twice, her radio was knocked from her hand and kicked under a table. Waits testified that all of the inmates in section “D” of cellblock J-2 were fighting and that they continued to fight until inmates in another section of the cellblock called out that the guards were coming. Waits testified that during the fight she was intentionally assaulted by inmates Derrick Davis, Anthony Wright, and Harold Eatmon when she attempted to retrieve her radio and when she attempted to stop the assaults that were going on around her.
Waits’s supervisor, Sergeant Madelyn Franklin, testified that, although she did not hear the first two calls from Waits, she did eventually receive a radio transmission from Waits and that she immediately sent help. The officer sent by Franklin testified that it took her no longer than approximately 30 seconds to reach Waits. Other officers overheard a transmission from Waits and ran to the cellblock. After the disturbance was controlled, Waits was taken to a hospital, where she was treated and released. Waits testified that she was referred to a specialist for an injury , to her jaw and that she was referred to a psychologist because of emotional problems resulting from the incident in cell-block J-2.
Waits sued the three inmates (Davis, Wright, and Eatmon); Birmingham police lieutenant Robert Stone; Birmingham police major Frank Alexander; Birmingham police sergeant Joel Brown; and the City of Birmingham. Waits alleged that the inmates were liable to her for assault and battery; that the police employees were liable to her for negligent supervision of the inmates and negligent performance of their duties; and that the City of Birmingham was liable to her for negligent hiring and supervising of the defendant police employees. Waits claimed that, as a result of the defendants’ conduct, she had suffered physical injuries and emotional distress and that her injuries had ultimately forced her to leave her employment as a correctional officer. Waits demanded $1 million in damages.
The court entered default judgments against the inmates, in favor of Waits. The defendants Stone, Alexander, Brown, and the City of Birmingham answered alleging that the proximate cause of Waits’s injuries was inmate' misconduct and, further, that Waits was contributorily negligent in that she violated jail policies and procedures by entering the cellblock alone.
Waits later dismissed Stone from the action. The remaining defendants moved for a summary judgment, alleging that Waits had already been awarded a judgment against the inmates whose conduct was the proximate cause of her injuries; that Waits had been contributorily negligent; and that there was no evidence of any conduct by any of those remaining defendants or by any agent of the City that “combined or concurred” with the inmates’ conduct to cause Waits’s injuries. The trial court denied the motions for a summary judgment. The case against the remaining defendants was tried before a jury; however, during the course of the trial, the court granted Brown’s motion for a directed verdict.
In preparation for trial, Waits amended her response to the motions for summary judgment, in compliance with the trial court’s request that she address the issue whether Ala.Code 1975, § 25-6-1 (a portion of the Employer’s Liability Act), protected the de *1129 fendant City of Birmingham from a lawsuit by an employee. The trial court also charged the jury with respect to the effect of the applicability of the Act.
A portion of the trial court’s jury charge instructed the jurors on the law regarding claims alleging that an employer had failed to provide a safe workplace. The trial court stated:
“An employer such as the City of Birmingham has a duty to furnish employment which shall be reasonably safe for the employees ... and to furnish such safety devices, safeguard methods and processes as are reasonably adequate to render both the employment and the place of employment reasonably safe for employees.”
The court charged the jury that the City of Birmingham could delegate its duty to provide a safe workplace for City employees, but made it clear that finding the City liable to Waits for failure to provide her with a safe workplace did not require a finding that the agent of the City (Major Alexander) had also breached that duty. The trial court also pointed out, however, that if the jury found that Alexander had breached his duty to Waits, the City must be found liable also.
At the close of his charge to the jury, the trial judge asked the parties for objections. There were none.
The jury returned a verdict in favor of Alexander and against Waits, and'a verdict in favor of Waits and against the City of Birmingham, and awarded Waits $100,000.[1] •The trial court denied the City’s post-judgment motion for a JNOV or a hew trial. The City has appealed; however, it does not challenge the amount of the verdict as excessive.
Section 25-6-1 of the Employer’s Liability Act provides, in pertinent part:
“(a) Except as otherwise provided by law, when a personal injury is received by a servant or employee in the service or business of the master or employer, the master or employer is liable to answer in damages to such servant or employee, as if he were a stranger and not engaged in such service or employment, provided such liability is enforced in a court of competent jurisdiction, in the cases following:
“(1) When the injury is caused by reason of any defect in the condition of the ways, works, machinery or plant connected with or used in the business of the master or employer.
“(2) When the injury is caused by reason of the negligence of any person in the service or employment of the master or employer who has any superintendence intrusted to him, while in the exercise of such superintendence.
“(3) When such injury is caused by reason of the negligence of any person in the service or employment of the master or employer, to whose orders or directions the servant or employee at the time of the injury was bound to conform and did conform, if such injuries resulted from his having so conformed.
“(4) When such injury is caused by reason of the act or omission of any person in the service or employment of the master or employer, done or made in obedience to the rules and regulations or bylaws of the master or employer, or in obedience to particular instructions given by any person delegated with the authority of the master or employer in that behalf.”
The City claims that it cannot be held liable pursuant to § 25-6-1 because there was no evidence 1) that the fight among the inmates and the resulting attack on Waits were foreseeable events; or 2) that there was negligence on the part of the City. Further, says the City, to affirm this judgment would be to place on the City the impossible burden of “insuring” that inmates will not attack jail personnel. We disagree.
The record reveals that before the incident of May 16, 1991, the City had been made aware on numerous occasions of the safety problems that existed at the jail. Evidence at trial included 1) a May 1990 petition from jail employees to Major Alexander, chief jail administrator, outlining what the employees considered to be dangerous working conditions at the jail and noting that, in the six *1130 months preceding the date of the petition, four jail officers had been injured when, in carrying out their duties, they had entered a cell; 2) a March 1991 letter from Waits to Alexander informing Alexander that the jail’s radio and intercom systems often did not work and that Waits had worked an entire shift without any means to call for help if help had been needed; 3) the testimony of Major Alexander acknowledging jail under-staffing and the problems with the jail’s radio and intercom systems, (including his statement that he knew officers had worked without means to call for backup and that he had made the City officials aware of the problems); and 4) the testimony of Officer Robin McNutt that the radio and intercom systems in the jail had not worked properly for some time and that the City had been made aware of this problem.
Holding the City responsible pursuant to the requirements of § 25-6-1 does not place on the City a burden that is not shared by all employers, and a holding to the contrary would contravene the purpose of that section. Despite being given warnings and notices regarding the conditions at the jail, the City failed to take action to prevent the kind of incident that resulted in this lawsuit, and the evidence of that failure supports the imposition of liability under § 25-6-1.
The. City acknowledges that the issue of foreseeability of harm from third persons is one for the jury to resolve. However, says the City, in the cases holding that a party had a duty to protect another from criminal acts of a third party, the claim of “foreseeability” was supported by evidence from which a jury could infer that element. See, e.g., City of Birmingham v. Benson, 631 So.2d 902 (Ala.1993); Thetford v. City of Clanton, 605 So.2d 835 (Ala.1992); Nail v. Jefferson County Truck Growers Association, Inc., 542 So.2d 1208 (Ala.1988). Here, says the City, there was no evidence from which the factfinder could infer that the harm to Waits had been foreseeable. However, we conclude that this argument is without merit, in light of the evidence regarding the notice given to the City of the problems of understaffing and malfunctioning equipment at the jail.
We hold that it was not unreasonable for the jury to conclude that if Waits’s radio had worked correctly, she would have been aided by a quicker response that would have resulted in subduing the prisoners before the assault on Waits occurred. In other words, the jury was justified in concluding that the problems at the jail — understaffing and malfunctioning equipment — were the proximate cause of her injuries.
Although working as an employee of the jail carries with it an inherent risk of injury, this fact alone does riot remove the City’s liability for failing to take reasonable precautions to maintain a safe workplace for its employees. The City failed to provide the jail with the equipment and staffing sufficient to prevent the inherent risk of harm in being a jail employee from escalating to an unreasonable level of risk. Stated differently, Waits alleged, and the jury reasonably could have found, in the context of the facts of this case, that the City failed to provide Waits with a safe workplace and that that failure produced a risk of harm over and above the risk inherent in Waits’s employment as a guard at the Birmingham jail.
The City also claims that the trial court should have granted its post-judgment motion for a new trial because, it argues, the jury’s verdicts (one in favor of Waits and against the City, and one against Waits and in favor of Alexander) are inconsistent and the result of improper jury deliberations. The City argues that § 11-47-190 sets out a respondeat superior doctrine; therefore, says the City, because no City agent or employee was held liable to Waits, it was impossible to hold the City liable to Waits.
Waits counters by arguing that the evidence clearly established, at the very least, negligence, carelessness, and unskillfulness in running the jail. Additionally, the cases upon which Waits relies imposed liability upon the municipality without a finding that any one specific municipal employee or agent was individually negligent, careless, or unskillful. City of Birmingham v. Hale, 574 So.2d 784 (Ala.1991); City of Birmingham v. Thompson, 404 So.2d 589 (Ala.1981); Wassman v. Mobile County Communications Dis *1131 trict, 665 So.2d 941 (Ala.1995); Craig v. City of Mobile, 658 So.2d 438 (Ala.1995).
The City’s final argument is without merit. The City claims that Waits failed to plead and prove a case pursuant to the Employer’s Liability Act, Ala.Code 1975, § 25-6-1 et seq. However, Waits did offer evidence to prove a claim under the Act, and, when the trial court charged the jury pursuant to the Act, the City did not object. The Act, then became the law of the case. BIC Corp. v. Bean, 669 So.2d 840 (Ala.1995) (and authorities cited therein).
The judgment is due to be affirmed.
AFFIRMED.
SHORES, HOUSTON, KENNEDY, and BUTTS, JJ., concur.
HOOPER, C.J., and MADDOX and SEE, JJ., dissent.

. The trial court had previously granted defendant Joel Brown’s motion for a directed verdict.