965 So.2d 240 (2007)
WEST BOCA MEDICAL CENTER, INC., etc., Appellant,
v.
Ruth MARZIGLIANO, Appellee.
No. 3D06-2517.
District Court of Appeal of Florida, Third District.
September 12, 2007.
*242 McIntosh, Sawran, Peltz & Cartaya and James C. Sawran, Fort Lauderdale and Robert C. Weill, for appellant.
Bohannon, Rogers, Aronson & Pacella and Lawrence J. Bohannon; Diane H. Tutt, Fort Lauderdale, for appellee.
Before COPE, RAMIREZ and SALTER, JJ.
SALTER, J.
West Boca Medical Center, Inc. ("Hospital") appeals three aspects of a jury verdict in favor of Ruth Marzigliano ("Marzigliano"), a labor and delivery nurse who slipped and fell while entering a hospital room. We affirm the verdict and judgment in all respects.
We review the jury verdict and material facts supporting it in the light most favorable to Marzigliano.
Pertinent Evidence at Trial
On the day of the accidentMarch 16, 2001Marzigliano had been a nurse for over twenty years. At the time, she was a labor and delivery nurse accustomed to twelve-hour shifts and long periods of being on her feet. She was not an employee of the Hospital, but worked instead for non-party American Medical Central, Inc. ("American Medical"), a health services company. American Medical provided nursing services to the Hospital under a contract with yet another non-party.
At the time of the accident, housekeeping services in the relevant parts of the Hospital were provided by a separate company (a defaulted defendant below, Signature Service Group, Inc., ("Signature")). In this appeal, the Hospital does not dispute that it is vicariously liable for the acts and omissions of Signature as they relate to the floor upon which Marzigliano slipped and fell. At the time of trial, the jury was instructed that the Hospital was responsible for any negligence of Signature regarding the maintenance of the floor where the injury occurred.
The evidence also established that a Hospital employee served as the head of overall housekeeping.
The accident occurred when Marzigliano entered patient room 153, marked "ready" by housekeeping on a status board at the nurses' station, to prepare the bed and linens for the arrival of a patient. As she entered the room to reach the light switch, she slipped and fell in some water apparently left on the floor by housekeeping. There were no cones or other warning signs to indicate that the floors might still be drying.
Although her injury was originally thought to be a sprain, later evaluation disclosed a torn peritoneal tendon. The injury caused her to struggle in performing *243 her duties as a floor nurse. She also missed work because of pain and various medical evaluations and treatment, including surgeries. By the time of trial in mid-2006, Marzigliano was continuing to suffer pain, swelling, numbness and weakness that affected her ability to work. Dr. Greenman, Marzigliano's treating podiatrist, testified that the injury caused her ankle to become unstable and that, despite multiple surgeries and other treatments, her ankle continued to be more susceptible to re-injury.
Marzigliano, age fifty-nine at time of trial, provided tax returns showing income that dropped by over $22,000 from the year before the accident to the first full year after the accident.
The Jury's Verdict
Although the Hospital argued at trial that Marzigliano herself was partially responsible for the accident, that she had other injuries and medical problems, and that she was essentially asking for a million dollars for a sprained ankle, the jury rendered a verdict overwhelmingly in her favor. On a special interrogatory form, the jury found that the Hospital was negligent and a legal cause of injury to Marzigliano, that Signature was negligent and a legal cause of injury to Marzigliano, and that she herself was not negligent.
The jury ascribed one-hundred percent of the negligence involved in the injury to the Hospital, zero percent to Signature, and zero percent to Marzigliano. Past medical expenses were fixed at $202,600.26 in accordance with a stipulation between the parties. No future medical expenses were awarded on the separate interrogatory line provided to the jury for that category of damages. Past lost wages of $45,000 were awarded, as well as $360,000 in a separate line item for future lost wages. Finally, damages for past "pain and suffering, disability, physical impairment, mental anguish, inconvenience, or loss of capacity for the enjoyment of life" were separately awarded in the amount of $40,000, while the award for future damages in that non-economic category were set at zero by the jury. The Hospital's motions for new trial, judgment notwithstanding the verdict, and remittitur were denied, and this appeal followed.
Issue One"0%" Negligence Ascribed to Signature
The Hospital first argues that it could only be liable vicariously and only for the wrongdoing of Signature as the active tortfeasor. The jury found both the Hospital and Signature to be negligent. Because the jury apportioned "0%" of the liability to Signature, the Hospital asserts that it is vicariously liable for zero percent of Marzigliano's injury and damages. However, because Signature's duties had been determined by the trial court to be non-delegable, the jury was given an instruction on the point. The jury was instructed that, "as a matter of law," the Hospital was responsible for any negligence regarding the maintenance of the floor involved in the accident. The jury's verdict finding "0%" comparative negligence on the part of Signature is entirely consistent with that instructionthe jurors apparently understood that any responsibility on the part of Signature was to be ascribed to the Hospital. Moreover, the jurors did find in their first interrogatory that the Hospital's negligence was a legal cause of injury to Marzigliano. There was sufficient evidence to establish that an employee of the Hospital had overall supervisory responsibility for housekeeping.
Finally, an alleged inconsistency in the form of the verdictof the kind claimed heremust be raised before the jury is discharged. This would have allowed *244 the trial court to rule on the alleged inconsistency, and the jury could then have corrected the verdict. Deklyen v. Truckers World, Inc., 867 So.2d 1264, 1266 (Fla. 5th DCA 2004).
Issue Two"Fundamental Inconsistency"
The Hospital next argues that two inconsistencies in the jury's verdict are so fundamental that a new trial is required. The first alleged inconsistency is the finding of negligence by Signature despite the allocation of "0% fault" to Signature in a separate interrogatory. The Hospital argues that the entry of a default against Signature required the jury "by law" to attribute at least one percent fault against Signature. There is no indication that any such attribution or allocation would produce a different outcome, however, because the Hospital accepted one-hundred percent vicarious liability for the pertinent acts and omissions of Signature. This alleged shortcoming is harmless, and it also fails for the reasons set forth in the analysis of the Hospital's first issue.
The Hospital asserts that the verdict form is also fatally inconsistent because it awarded Marzigliano $360,000 for lost earning capacity but nothing for future medical expenses or for future pain and suffering, disability, or physical impairment.
In a series of cases, however, this Court has declined to order a new trial or to remand for a reallocation of the various components of damage unless the verdict taken as a whole is grossly excessive or contrary to the manifest weight of the evidence. "The manner in which the jury itself allocated the awards to the various elements of damages made no legal difference to the bottom linethe clearly sustainable gross amount which the defendant must pay the plaintiff for the injuries it caused." Delva v. Value Rent-A-Car, 693 So.2d 574, 577 (Fla. 3d DCA 1997).
In this case, the jury might have awarded hundreds of thousands of dollars for future pain and suffering if the alleged inconsistency had been raised and the jurors had then reduced the "future lost wages" component. The total monetary amount awarded Marzigliano is not, "so large that it indicates the jury must have been under the influence of passion, prejudice, or gross mistake." Pierard v. Aerospatiale Helicopter Corp., 689 So.2d 1099, 1101 (Fla. 3d DCA 1997), citing Phillips v. Ostrer, 481 So.2d 1241, 1246 (Fla. 3d DCA 1985).
Issue ThreeEvidence Regarding Loss of Future Earning Capacity
The Hospital correctly asserts that damages for loss of future earning capacity must be based on competent substantial evidence. In this case, the jurors reviewed tax returns indicating that Marzigliano's wage income dropped over $22,000 from 2000 (the year preceding the injury) to 2002 (her first full year of work after the injury). Her income in her last full year of work before the accident was $56,550, and the evidence showed that she was a fifty-nine year-old nurse hoping to work another eight years, but with significant on-the-job pain and impairment, and with a substantial prospect for re-injury if she continued to work as before. The jury may have intended to base its award on the demonstrated losses after the accident (but projected for a term longer than eight years), or it may have decided that Marzigliano should not work because of the risk of further injury, reducing eight years of lost future earning capacity to present value. The "reasonable certainty" rule for the calculation of damages does not require mathematical precision, and such an award by the jury will not be disturbed if supported, as here, by substantial competent *245 evidence. A purported award of lost future earning capacity that is not supported by such evidence, in contrast, will be reversed. Miami-Dade County v. Cardoso, 963 So.2d 825, 829 (Fla. 3d DCA 2007).
We therefore affirm the jury's verdict for Marzigliano and the trial court's denial of the Hospital's post-trial motions in all respects.